UNITED STATES of America, Plaintiff-Appellee,

v.

Harry Harold CHERETON, Defendant-Appellant.

No. 14822.

United States Court of Appeals
Sixth Circuit.

Oct. 26, 1962.

Walter E. Gwinn, Miami, Fla., for appellant.

Paul J. Komives, Asst. U. S. Atty., Detroit, Mich. (Lawrence Gubow, U. S. Atty., William H. Merrill, Chief Asst. U. S. Atty., Eastern Dist. of Michigan, Detroit, Mich., on the brief), for appellee.

Before MILLER, Chief Judge, and McALLISTER and WEICK, Circuit Judges.

WEICK, Circuit Judge.

This appeal is from an order of the District Court denying Chereton's petition for a Writ of Error Coram Nobis.

On January 6, 1956, in the District Court, the Grand Jury returned an indictment against Chereton containing five counts. The first count charged him with conspiracy to use the mails to defraud in violation of Sections 371 and 1341 of Title 18, U.S.C. and alleged three overt acts in furtherance of the conspiracy. The second, third, fourth and fifth counts of the indictment charged him with making false oaths in relation to a bankruptcy proceeding pending in that court entitled "In the Matter of Consolidated Radio & Appliance Company," in violation of Title 18 U.S.C. § 152. He was released on bond.

Chereton filed a motion to dismiss Count 1 of the indictment which was denied by the Court. An appeal was prosecuted to this Court which was dismissed on the ground that the order from which the appeal was taken was not a final appealable order. 6 Cir., 256 F.2d 576.

The case finally came on for trial before a jury on April 17, 1959. During the course of the trial on April 24, 1959, Chereton filed another motion to dismiss Count 1 of the indictment and the docket entries show that on April 28, 1959 "Count 1 was dismissed on motion of deft."

The case was submitted to the jury on May 5, 1959 only on the remaining counts, 2, 3, 4 and 5 of the indictment,

which charged Chereton with making false oaths in relation to the bankruptcy proceeding. On the same day, the jury returned a verdict of guilty on each of the four counts. Chereton was sentenced to two years imprisonment on each of the four counts to run concurrently.

Chereton appealed from his conviction to this Court, on grounds other than now asserted, and the judgment of the District Court was affirmed. 6 Cir., 286 F.2d 409. Certiorari was denied by the Supreme Court, 366 U.S. 924, 81 S.Ct. 1351, 6 L.Ed.2d 384. On May 31, 1961 the District Court continued Chereton's bond on appeal pending a decision by the Supreme Court on his petition for rehearing filed in that Court. The Supreme Court denied rehearing on June 19, 1961. 366 U.S. 978, 81 S.Ct. 1918, 6 L.Ed.2d 1269.

On October 25, 1961 Chereton filed the present petition for a Writ of Error Coram Nobis in the District Court. The record before us does not indicate any proceeding pending in Court between the dates of June 19, 1961, when the Supreme Court denied rehearing, and October 11, 1961 when Chereton petitioned this Court for leave to file his Coram Nobis proceeding during which time Chereton was at large on the appeal bond which was to run only until the determination of the petition for rehearing.

The gist of the petition for Writ of Error Coram Nobis was that the jury, which had convicted Chereton on the only counts of the indictment which had been submitted to it, namely, Counts 2, 3, 4 and 5, had not really intended to convict him on those counts, but thought it was convicting him of the conspiracy and the three overt acts alleged in Count 1 of the indictment which count had been dismissed by the Court during the course of the trial and had never been submitted to the jury. The pertinent allegations of the petition are set out in footnote 1.[1]

[1] VIII

That on or about July 14, 1961 the Petitioner herein had cause to be in Detroit, Michigan, to visit his brother who was ill at the time, and while there happened to have a discussion about his case with

Mr. Louis M. Dunn who served as foreman of the trial jury that returned the aforementioned verdict of guilty as charged. During the course of the conversation with Mr. Dunn, Mr. Dunn expressed shock and dismay upon learning

At the hearing in the District Court the only proof offered in support of the Coram Nobis petition was the affidavits of four jurors attached thereto, which we will discuss later in the opinion. The statement was made that juror Bell had promised that he would be glad to testify before the trial court if called upon to do so. No proof was offered as to what his testimony would be. No statement was made nor proof offered by the seven remaining jurors that they had made any mistake in the verdict they returned.

Chereton did not explain just how he "happened to have a discussion about his case" with the foreman of the jury two years after the verdict had been returned. No irregularity in connection with the verdict of the jury had been brought to the attention of the District Court until the filing of the Coram Nobis proceeding.

The District Judge, in his oral opinion, pointed out the improbability of the jury making any such mistake as Chereton claims. In his charge to the jury, the Court had submitted to the jury only Counts 2, 3, 4 and 5 of the indictment which related to the false oaths in the bankruptcy proceeding. With respect to

for the first time that your Petitioner had been convicted of Counts Two, Three, Four and Five of the aforementioned Indictment; the sworn Affidavit of Foreman Louis M. Dunn is attached and made a part of this Petition.

### IX

That upon learning of the erroneous verdict, the said foreman of the jury, Louis M. Dunn, immediately set about in an attempt to locate other members that served on the jury; that the following jurors were located by Mr. Dunn and your Petitioner:

MARIE R. LABELLE, 6021 Frontenac, Detroit, Michigan;

LILLIAN H. GRANT, 8063 Lambert, Detroit, Michigan;

NONOUS D. COPLEN, 5848 Montclair, Detroit, Michigan;

WILLIAM M. BELL, 3378 Pasadena, Detroit, Michigan.

### X

Upon discussing the aforementioned verdict with the foregoing jurors, all were in accord that the verdict had been in error and the sworn Affidavits of MARIE R. LABELLE, LILLIAN H. GRANT, NONOUS D. COPLEN and LOUIS M. DUNN, foreman, are attached to and made a part of this Petition.

### XI

That juror, WILLIAM M. BELL, has promised that he will be glad to testify before the trial court if called upon to do so.

### XII

From a reading of the aforementioned Indictment, it is easily understood why and how the jurors became confused as to the Counts involved. The foreman and the other aforementioned jurors all agree that they did not even discuss the guilt or innocence relating to Counts Two, Three, Four and Five of the Indictment and that it was the sole intent of the jury to find the Petitioner guilty on the four parts contained in Count One of the Indictment herein. None of the aforementioned jurors were aware of the fact at the time of their deliberations that Count One had been dismissed by the trial court. According to the attached Affidavits, none of the jurors believe the Petitioner guilty of Counts Two, Three, Four and Five of the Indictment herein. It is further apparent that when the jury returned to the jury box and were requested to announce the jury's findings in regard to Counts Two, Three, Four and Five, that they announced guilty, but that it was the unanimous opinion and belief of the jury that such verdict was in connection with and pertained to Count One of the Indictment herein and their subsequent announcement of guilty for Counts Three, Four and Five was intended to be a finding of guilty on the various parts of Count One of the Indictment herein and not of Counts Two, Three, Four and Five of the Indictment.

### XIII

Had this information been known to the trial judge, it would have precluded him from entering the judgment and sentence herein.

### XIV

It is, therefore, apparent that the jury did not intend to convict your Petitioner for the Counts involving the false oath in bankruptcy contained in Counts Two, Three, Four and Five of the Indictment herein. It is further apparent by the sworn Affidavits that had it been known to the jury that Count One of the Indictment herein had been dismissed, that the jury would have unanimously presented a verdict of not guilty for your Petitioner and he would have been discharged.

Count 1 the Court specifically instructed the jury in plain language as follows:

"I further charge you that Count One of this indictment, which charged this defendant with entering into a conspiracy with the witness, Raymond Kaufman, has been dismissed by this Court for legal reasons, and you are not called upon to decide upon that charge, and you will not, therefore, consider this charge in any manner whatsoever (808). Since it has been dismissed by the Court, it is the same as if it had never been charged against Mr. Chereton, the defendant."

After the case had been submitted to the jury the following request was made by the jury to the Court: "The jury requests the transcript of the indictment of all four counts."

Later the jury advised the Court that "they just want the indictment."

The Court then, with the approval of counsel, manually cut out Count 1 from the indictment and sent to the jury the indictment which contained the only counts that had been submitted to it, namely, Counts 2, 3, 4 and 5. The very purpose of the deletion of Count 1 from the indictment was to avoid any possibility of confusion.

The following proceedings took place when the jury returned its verdict:

"(At 3:00 P. M., the following proceedings were had.)

"The Court: Bring in the jury.

"(The jurors thereupon returned to the courtroom, and the following proceedings were had in their presence.)

"The Clerk of the Court: Members of the jury, have you agreed upon a verdict?

"The Foreman: We have.

"The Clerk of the Court: What is your verdict as to the defendant, Harry Harold Chereton, as to the charges contained in Count Two of the indictment filed against him?

"The Foreman: Guilty.

"The Clerk of the Court: What is your verdict as to the defendant, Harry Harold Chereton, as to the charges contained in Count Three of the indictment filed against him?

"(822) The Foreman: Guilty.

"The Clerk of the Court: What is your verdict as to the defendant, Harry Harold Chereton, as to the charges contained in Count Four of the indictment filed against him?

"The Foreman: Guilty.

"The Clerk of the Court: What is your verdict as to the defendant, Harry Harold Chereton, as to the charges contained in Count Five of the indictment filed against him?

"The Foreman: Guilty.

"(The verdict was thereupon read to the jurors by the Clerk of the Court.)

"The Clerk of the Court: And so say you all?

"The Jurors: We do."

It is significant that the Clerk asked the jury separately what was its verdict on each of the four counts and the foreman responded "Guilty" on each count. The Clerk then read the verdict to the jury and asked "And so say you all?" The jurors: "We do."

While each juror was not polled individually, the jury was polled as a group and the jurors responded in open court that it was their verdict. Not a single juror indicated that he was confused or did not know what he was doing.

▪ Where jurors in their jury room and in open court gave their unanimous assent to a verdict which was accepted by the court and the jury discharged, it is too late thereafter for individual jurors to change their minds and claim that they were mistaken or unwilling in the assent which they gave. Wigmore, Evidence (McNaughton Revision) § 2355 p. 717.

The instruction that the jurors were not to consider Count 1 was certainly

clear and unambiguous. The District Judge placed no credence in the claim that the four jurors thought they were finding Chereton guilty of conspiracy and of the three overt acts alleged in the indictment instead of on Counts 2, 3, 4 and 5 which was their verdict. He considered it incredible that any juror, under the circumstances of this case, could have made such a mistake. Count 1 was a single count. The jury found Chereton guilty on four separate counts. There was no similarity between the unsubmitted Count 1 which charged conspiracy to use the mails to defraud and the submitted Counts 2, 3, 4 and 5 which, in effect, charged perjury in a Bankruptcy proceeding. The District Judge found it difficult to believe that the four jurors could remember for more than two years the complicated and technical conspiracy Count 1 and the three overt acts therein contained, on which they claim to have found Chereton guilty, when even some lawyers have difficulty in understanding conspiracy indictments at the time when they are reading them. Particularly is this so since Count 1 was never explained to the jury by the Court, was never read by the jurors and had not been a part of the indictment sent to the jury room. It is one thing for jurors to make a unanimous mistake in respect to a matter actually submitted to them. It is something entirely different for individual jurors to claim that they found defendant guilty of an offense which was never submitted to them for their determination. The alleged mistake in this case was not made by all the jurors.

The District Judge carefully examined the four affidavits of jurors attached to the Coram Nobis petition. Only one was an original and the remaining three were carbon copies. All of the affidavits had blank spaces in which the names and addresses of the affiants had been inserted apparently after the affidavits had been typed. Two of the affidavits were identical in wording and the other two contained similarities.

Chereton argues that the District Court should have called in each of the jurors for examination. The District Judge did consider the affidavits as if the jurors had testified to the effect stated therein and concluded not to examine the jurors further. He decided that the jurors could not impeach their verdict by affidavits or testimony as to how or in what manner they arrived at it.

The testimony of jurors is not to be received "to show matters which essentially inhere in the verdict itself and necessarily depend upon the testimony of the jurors and can receive no corroboration." Hyde v. United States, 225 U.S. 347, 384, 32 S.Ct. 793, 808, 56 L.Ed. 1114.

The affidavits of the four jurors undertook to disclose their deliberations in the secrecy of the jury room. This involved a matter of public policy requiring the Court to consider the injury which might be inflicted upon the public if jurors were permitted to testify as to what happened in the jury room.

Courts have not favored inquisitions of jurors feeling that jurors may be intimidated, vexed or harassed thereby and that the practice might lead to dangerous consequences of jury tampering with the result that no verdict would be safe. Stein v. New York, 346 U.S. 156, 73 S.Ct. 1077, 97 L.Ed. 1522; McDonald v. Pless, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300.

While there might be instances in which the testimony of jurors should not be excluded without violating the plainest principles of justice, McDonald v. Pless, supra; Mattox v. United States, 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917, in our judgment, this is not such a case.

We find no abuse of discretion in the handling of this matter in the District Court and its judgment is affirmed.