STATE of North Dakota,
Plaintiff/Appellee,

v.

Gary SHELDON, Defendant/Appellant.

Crim. No. 714.

Supreme Court of North Dakota.

Oct. 30, 1980.*

* Application for Writ of Certiorari has been filed
in United States Supreme Court.

Frederick E. Saefke, Jr., Bismarck, for defendant and appellant.

John Romanick, State's Atty., Washburn, for plaintiff and appellee.

PAULSON, Justice.

Charles Gary Sheldon appeals from a judgment of conviction for reckless endangerment entered against him on February 25, 1980, by the McLean County District Court. A 12–member jury returned a guilty verdict against Sheldon on the charge of reckless endangerment. We affirm the judgment of conviction.

At 8:30 p. m. on Monday, March 19, 1979, Deputy Sheriffs James Anderson and Douglas Kresbach received a call from the McLean County sheriff's office at Washburn. The sheriff's office informed the deputies that Dorothy Sheldon, the wife of the defendant and appellant, had requested assistance due to a domestic disturbance at the couple's mobile home. When the deputies arrived there, Mrs. Sheldon was waiting for them outside of the mobile home. She told the deputies that Sheldon had been drinking and had been using physical force against members of the family. The deputies assured Mrs. Sheldon that they would protect her until she could safely leave the mobile home.

Mrs. Sheldon requested that the deputies keep Sheldon out of the bedroom because Mrs. Sheldon wished to gather some of her belongings. Sheldon was permitted to enter the master bedroom, however. Deputy

Anderson waited outside the bedroom. After Sheldon started arguing with his wife in the bedroom, Anderson intervened and requested that Sheldon allow his wife to leave. Mrs. Sheldon was allowed to leave the bedroom but, as she turned, she saw Sheldon reaching for his gun holster and she exclaimed "My God, he's going for his gun".

Deputy Anderson looked into the bedroom and saw Sheldon reaching for his gun. Anderson jumped back and drew his revolver and told Sheldon to put his gun away. Sheldon denies that he heard Anderson's request to put his gun down. Anderson pointed his revolver around the corner of the hallway where he was standing and into the bedroom. Sheldon saw Anderson's gun and fired his gun at it. The fragments of the bullet passed through the wall of the mobile home and struck Anderson in his stomach and hand. Anderson's wounds were not disabling and he was able to leave the mobile home without assistance.

On March 20, 1979, Deputy Anderson signed a complaint which charged Sheldon with attempted murder. Before commencement of the trial, the State requested that the court give an instruction on the lesser included offense of aggravated assault. Sheldon's counsel objected to the State's request on the basis that intoxication as a defense would not be available to Sheldon on the lesser included offense of aggravated assault. Sheldon's counsel contends that the inclusion of the instruction on aggravated assault violated due process. At trial, Sheldon's counsel requested instructions on the lesser included offenses of simple assault, menacing, and reckless endangerment; however, Sheldon's counsel alluded to as error the inclusion of any lesser included offenses in the jury instructions on the basis that instructions on lesser included offenses are solely within a defense counsel's authority to request.

The district court denied Sheldon's requested instructions on intoxication as a defense; on what constitutes a dwelling; on the offense of menacing; and on the right to employ force. Sheldon's counsel objected to the instruction given by the court on the definition and meaning of "intent". Sheldon's counsel argued that the presumption included in the instruction on "intent" violated the rule announced by the United States Supreme Court in *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). Sheldon's counsel also objected to the wording used by the district court in the instruction on the crime of reckless endangerment.

Sheldon's counsel objected to the form of the verdict given to the jury on the crime of reckless endangerment. Sheldon's counsel contends that the form of the verdict amounted to a special verdict. Finally, Sheldon contends that the jury improperly arrived at its verdict and he relies upon affidavits supplied by several jurors who expressed surprise at the penalty imposed for the crime of reckless endangerment. The jury deliberated for approximately ten hours and, after a brief intermission, returned after one–half hour of further deliberations to render a verdict.

The issues presented for our determination are as follows:

(1) Whether or not the district court committed constitutional error when the court submitted instructions on lesser included offenses to the jury;

(2) Whether or not the district court committed error when the court denied Sheldon's requested instructions;

(3) Whether or not the district court committed error when the court submitted the instruction on intent;

(4) Whether or not the district court committed error when the court submitted a form of the verdict accompanied by a question concerning the jury's deliberations;

(5) Whether or not jury misconduct was a factor in arriving at the jury's verdict;

(6) Whether or not the district court committed error when the court denied Sheldon's motions for acquittal on the charge of attempted murder; and

(7) Whether or not the evidence was sufficient to support the jury's verdict of guilty of the crime of reckless endangerment.

## I.

Sheldon contends that the district court erred when it submitted instructions on the offenses of aggravated assault, simple assault, and reckless endangerment. Apparently the objection is three–fold. Firstly, Sheldon's counsel contends that instructions concerning lesser included offenses are solely the prerogative of the defendant. Secondly, Sheldon's counsel contends that inclusion of the instructions on lesser included offenses violated Sheldon's right to adequate notice of the charges against him. Finally, Sheldon's counsel contends that aggravated assault, simple assault, and reckless endangerment are not lesser included offenses within the offense of attempted murder.

Sheldon's counsel bases the first part of his argument on the case of *Berra v. United States*, 351 U.S. 131, 76 S.Ct. 685, 100 L.Ed. 1013 (1956), where the United States Supreme Court stated that a defendant in a criminal case is entitled to an instruction on a lesser included offense as a matter of right if the evidence would permit the jury to find him guilty of that offense. Sheldon's counsel extends this argument to the instant case and argues that the defendant alone has the right to instructions on lesser included offenses. We disagree with Sheldon's argument on the basis that it misconstrues the nature and history of the lesser–included–offense doctrine which is contained in Rule 31(c) of the North Dakota Rules of Criminal Procedure.

■ The Committee Note accompanying subdivision (c) of Rule 31 of the Federal Rules of Criminal Procedure stated that Rule 31(c) was a restatement of existing law. The primary purpose of the statutory predecessors of Rule 31(c), F.R.Crim.P., was to aid the prosecution where its proof failed to prove all of the elements of the offense charged in the indictment.[1] The defendant may avail himself of instructions on lesser included offenses under certain factual circumstances. Similarly, the prosecution may also request instructions on lesser included offenses. *State v. Houser*, 261 N.W.2d 382 (N.D.1977); *State v. Piper*, 261 N.W.2d 650 (N.D.1978). Rule 31(c), N.D.R.Crim.P., was adopted from the Federal Rules of Criminal Procedure. We believe that the history surrounding Rule 31(c), F.R.Crim.P., applies with equal force to Rule 31(c), N.D.R. Crim.P.

■ The second part of Sheldon's counsel's argument involves Sheldon's Sixth Amendment right "to be informed of the nature and cause of the accusation against him". Sheldon's counsel's argument apparently is based on the premise that inclusion of lesser included offenses in the district court's jury instructions violated Sheldon's Sixth Amendment rights. In *Walker v. United States*, 135 App.D.C. 280, 418 F.2d 1116 (1969), the United States Court of Appeals for the District of Columbia held that an indictment submitted in a criminal case is sufficient notice to the defendant that he may be called upon to defend a lesser included charge. This rule has been reaffirmed in opinions by many State courts. *E. g., People v. Cooke*, 186 Colo. 44, 525 P.2d 426 (1974); *Wisner v. State*, 216 Kan. 523, 532 P.2d 1051 (1975); *State v. Daniels*, 223 Kan. 266, 573 P.2d 607 (1977). Thus, where a jury returns a guilty verdict to a lesser included offense not specifically stated in the information, the defendant is not deprived of his Sixth Amendment right to notice of the charges against him.

■ In the instant case, the information alleged that Sheldon committed the offense of attempted murder in violation of §§ 12.-1–16–01 and 12.1–06–01, N.D.C.C., by intentionally and knowingly attempting to cause the death of another human being. The

---

1. *See* 8A Moore's Federal Practice–Criminal Rules ¶ 31.03; 2 Wright, Federal Practice and Procedure: Criminal § 515. The Supreme Court of the United States has not explicitly held that the Due Process Clause of the Fifth Amendment guarantees to a defendant in a criminal case the right to have jury instructions submitted on lesser included offenses.

information alleged that Sheldon fired a .357 magnum pistol at Deputy Anderson in Sheldon's mobile home and that the bullet injured Anderson but failed to kill him. The contents of the information fully complied with Rule 7(c), N.D.R.Crim.P. In light of the history surrounding Rule 31(c), N.D.R.Crim.P., and the authority cited above, we conclude that Sheldon's rights under the Sixth Amendment were not violated.

Sheldon argues that the offenses of aggravated assault, simple assault, and reckless endangerment are not lesser included offenses within the offense of attempted murder. The doctrine of lesser included offenses was discussed in *Piper, supra* 261 N.W.2d at 654, wherein we stated that in order to submit an instruction on a lesser included offense, a two–part test must be resolved: the instruction must include an offense which is a lesser included offense to the offense charged; and the lesser included offense instruction can only be given if evidence exists which will create a reasonable doubt as to the greater offense and the evidence will support beyond a reasonable doubt a conviction of the lesser included offense.

■ A concise analysis of what we consider to be a necessarily included offense is contained in § 12.1–01–04(15), N.D.C.C.[2] Thus, there are three basic variants of necessarily included offenses. The offense of aggravated assault is defined in § 12.1–17–02, N.D.C.C.,[3] and attempted murder is defined in §§ 12.1–06–01 and 12.1–16–01, N.D.C.C.[4] Examination of these three variants of necessarily included offenses demonstrates that aggravated assault is not a lesser included offense of attempted murder.[5] The Committee Minutes concerning

**2.** 12.1–01–04. "*General definitions.*–As used in this title, unless a different meaning plainly is required:

"15. 'Included offense' means an offense: a. which is established by proof of the same or less than all the facts required to establish commission of the offense charged; b. which consists of criminal facilitation of or an attempt or solicitation to commit the offense charged; or c. which differed from the offense charged only in that it constitutes a less serious harm or risk of harm to the same person, property, or public interest, or because a lesser degree of culpability suffices to establish its commission. . . ."

**3.** 12.1–17–02. "*Aggravated assault.*–A person is guilty of a class C felony if he:
1. Willfully causes serious bodily injury to another human being;
2. Knowingly causes bodily injury to another human being with a dangerous weapon or other weapon, the possession of which under the circumstances indicates an intent or readiness to inflict serious bodily injury;
3. Causes bodily injury to another human being while attempting to inflict serious bodily injury on any human being; or
4. Fires a firearm or hurls a destructive device at another human being."

**4.** 12.1–06–01. "*Criminal attempt.*–1. A person is guilty of criminal attempt if, acting with the kind of culpability otherwise required for commission of a crime, he intentionally engages in conduct which, in fact, constitutes a substantial step toward commission of the crime. A 'substantial step' is any conduct which is strongly corroborative of the firmness of the actor's intent to complete the commission of the crime. Factual or legal impossibility of committing the crime is not a defense, if the crime could have been committed had the attendant circumstances been as the actor believed them to be.
2. A person who engages in conduct intending to aid another to commit a crime is guilty of criminal attempt if the conduct would establish his complicity under section 12.1–03–01 were the crime committed by the other person, even if the other is not guilty of committing or attempting the crime, for example, because he has a defense of justification or entrapment. . . ."
12.1–16–01. "*Murder.* A person is guilty of murder, a class AA felony, if he:
1. Intentionally or knowingly causes the death of another human being;
2. Causes the death of another human being under circumstances manifesting extreme indifference to the value of human life; or . . . ."

**5.** The definition of included offenses is similar to Model Penal Code § 1.07(4) and § 703(3)(a)(b)(c) of the Proposed Federal Criminal Code. Section 12.1–01–04(15), N.D.C.C., is adopted from the Proposed Federal Criminal Code section. The provision permitting conviction of an included offense even though it is not explicitly charged is consistent with Rule 31(c), N.D.R.Crim.P. The Comment to § 703 points out that the definition of included offenses expands the usual meaning of the term (same or less than all the facts) to cover facilitation and solicitation, which may require proof of additional or different facts."

the adoption of the present criminal code indicate that the word "assault" defines what is commonly considered a battery.[6] Under the offenses of simple assault and aggravated assault, bodily injury or serious bodily injury must result before an offender is guilty of assault. The Committee Minutes also discussed the fact that the offenses of simple assault and aggravated assault would eliminate liability for a traditional battery, which only included an unauthorized touching, while simple assault and aggravated assault require bodily injury. Attempted murder requires that the actor engage in conduct which constitutes a substantial step toward commission of the crime. A substantial step is any conduct which is strongly corroborative of the firmness of the actor's intent to complete the commission of the crime.

■ Aggravated assault under subsections 1, 2, and 3 of § 12.1–17–02, N.D.C.C., is not a lesser included offense to the offense of attempted murder because the elements necessary to prove commission of the offenses differ. Aggravated assault, except under subsection 4 of § 12.1–17–02, N.D.C.C., requires that a bodily injury be suffered by the victim of the offense. On the other hand, "criminal attempt" as defined in § 12.1–06–01(1), N.D.C.C., requires that the actor engage in a substantial step toward commission of the crime. The offense of attempted murder does not require that the victim of the offense suffer a bodily injury. Although a substantial step toward commission of the crime may well involve a bodily injury, it is clear that the elements of proof involved in the offenses of aggravated assault under subsections 1, 2, and 3 of § 12.1–17–02, N.D.C.C., and attempted murder differ, but not as to subsection 4 of § 12.1–17–02, N.D.C.C. This variance of proof, except as to subsection 4

of § 12.1–17–02, is fatal to the categorization of aggravated assault as a lesser included offense of attempted murder. However, aggravated assault under subsection 4 of § 12.1–17–02 can be a lesser included offense of attempted murder.

■ Although Sheldon is correct in his contention that aggravated assault is not a lesser included offense of attempted murder, the error was corrected by the instructions given by the district court. After defining for the jury the offenses of attempted murder, aggravated assault, simple assault, and reckless endangerment, the jury was instructed that if it should find the defendant not guilty of attempted murder, it should then in a like manner successively consider aggravated assault, simple assault, and reckless endangerment. In order to find the defendant guilty of a crime defined at any step, the jury was required to find the defendant guilty beyond a reasonable doubt. This form of instruction is known as a step instruction and it is designed to permit a jury to step–by–step consider a defendant's guilt from the most serious primary charge through each included offense to the least serious charge. Because the jury did not convict the defendant of the offense of aggravated assault, the inclusion of the instruction on aggravated assault operated only as mere surplusage and was not prejudicial error. The jury merely moved to another step in the list of offenses and disregarded the offense of aggravated assault.

■ Sheldon also contends that simple assault and reckless endangerment are not lesser included offenses of the offense of attempted murder and that inclusion of these offenses in the jury instructions was prejudicial. Our analysis of Sheldon's argu-

---

**6.** See Minutes of the Committee on Judiciary "B", May 11 and May 12, 1972. The Committee noted that traditional assault would be punished by a charge dealing with attempts or with menacing. Thus, an unsuccessful attempt to seriously injure someone which fails is an attempted assault. Sections 12.1–17–01 and 12.-1–17–02, N.D.C.C., define assault only in terms of a completed battery. For a further discussion of the history surrounding the development of the offense of criminal assault, see Perkins Crim.Law F.P. (1957), pp. 86–96. Reckless endangerment which involves reckless conduct generally is punishable as a misdemeanor. However, extreme recklessness is made felonious, regardless of whether injury is actually inflicted.

ment is made difficult because Sheldon's counsel interposed the instructions on the offenses of simple assault and reckless endangerment, yet claimed that any instruction regarding lesser included offenses was erroneous. Sheldon was convicted of the crime of reckless endangerment. Sheldon's counsel is in effect arguing that he may avail himself of probable errors which he helped to perpetrate. Sheldon's counsel's actions fall within the time–honored rule that a party to a criminal proceeding cannot complain of errors which he invited upon the court. *State v. Myers*, 276 N.W.2d 36 (Minn.1979); *People v. Hyatt*, 96 Cal.Rptr. 156, 18 Cal.App.3d 618 (1971); *People v. Crosby*, 19 Mich.App. 135, 172 N.W.2d 506 (1969). *See also State v. Berger*, 235 N.W.2d 254, 260, 262, *et seq.* (N.D.1975).

■ Although we are precluded from analyzing the merits of Sheldon's contention that reckless endangerment is not a lesser included offense within the offense of attempted murder, we realize that the concept of lesser included offenses is a difficult one. There are two probable variants of lesser included offenses. The first variant exists when it is impossible to commit the greater offense without committing the lesser included offense. Therefore, the elements of the offenses are the same regardless of the proof offered in a particular case. The second variant exists when the second offense is presumptively necessarily included within the offense charged in the case. However, the evidence adduced at trial may preclude an instruction on a lesser included offense if the elements of the primary offense are clearly established by the evidence.[7] A lesser included offense instruction is proper when the primary offense charged requires that the jury find the existence of an additional factual element which is not required for conviction of

the lesser included offense, under the rationale expressed in *Houser, supra* and *Piper, supra*.

## II.

The second issue concerns whether or not the district court committed error when the court denied Sheldon's requested instructions. Sheldon's counsel submitted instructions on intoxication, the definition of the term "dwelling", the offense of menacing, and the right to employ force. The district court denied these proposed instructions and submitted instructions on the limits on the use of force and intoxication as a defense to the charge of attempted murder. The district court did not submit instructions to the jury on the definition of "dwelling" or on the offense of menacing.

■ Sheldon's counsel does not specify how the instructions given by the district court constituted error and we find no errors in the instructions submitted by the court on these issues. The district court was not required to submit instructions in the specific language requested by the defendant. *State v. Folk*, 278 N.W.2d 410 (N.D.1979). The district court did not commit error when it denied giving the instructions on the definition of "dwelling" and on the offense of menacing because those requested instructions were not applicable in the instant case. A trial court may properly refuse to submit an inapplicable instruction to the jury. *State v. Samuels*, 205 Neb. 585, 289 N.W.2d 183 (1980).

## III.

The district court submitted the following instruction on intent:

"The mental state or intent with which an act is done is a mental process and as

---

7. *State v. Ankney*, 195 N.W.2d 547 (N.D.1972). *See* 8A Moore's Federal Practice ¶ 31.03[2]. For more information on the nature and problems encountered in lesser included offense instructions, *see State v. Piper*, 261 N.W.2d 650 (N.D.1977); *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). We note that the Appellate Court and the Supreme Court of Wisconsin have dealt with the issue

we have not analyzed today. These courts have held that the crime of endangering safety by conduct regardless of life is a lesser included offense of the crimes of attempted first–degree murder and first–degree murder. *See Walker v. State*, 92 Wis.2d 690, 286 N.W.2d 2 (1979); *Holmes v. State*, 63 Wis.2d 389, 217 N.W.2d 657 (1974); *Holesome v. State*, 40 Wis.2d 95, 161 N.W.2d 283 (1968).

such generally remains hidden in the mind where it is conceived, and it is rarely, if ever, susceptible of proof by direct evidence. Intent may be inferred from the outward manifestations, by the words or acts of the party entertaining it, and the facts or circumstances surrounding or attending upon the act sought to be proved, with which it is charged to be connected. It is presumed, however, that an unlawful act is done with an unlawful intent."

The instruction given on intent was adopted from North Dakota Pattern Jury Instruction 1313. Sheldon contends that the last sentence of the instruction violates the requirement of the Fourteenth Amendment that the State prove every element of a criminal offense beyond a reasonable doubt. In *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), the United States Supreme Court held that a jury instruction which stated that "the law presumes that a person intends the ordinary consequences of his voluntary act" violated the Fourteenth Amendment's requirement that the State prove every element of a criminal offense beyond a reasonable doubt.

The Supreme Court's decision in *Sandstrom* was based upon the probable effect of the instruction upon the jury. Because the jury might have interpreted the challenged presumption as conclusive or as shifting the burden of persuasion, the Court concluded that the instruction was unconstitutional. In *Sandstrom*, the jurors were not told that they might infer the conclusion that a person intends the ordinary consequences of his voluntary act. An instruction containing a permissible inference is constitutional. *Leary v. United States*, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969); *Ulster County Court v. Allen*, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).

The presumption contained in the instruction given in *Sandstrom v. Montana, supra,* is quite similar to the presumption at issue in the instant case. Also, the charge of attempted murder requires proof of intent just as the charge of deliberate homicide present in *Sandstrom* required proof of intent. However, Sheldon was convicted of the crime of reckless endangerment which requires proof of the mental state of recklessness. *State v. Hanson*, 256 N.W.2d 364 (N.D.1977). Thus, we are faced with a situation where the challenged jury instruction focuses upon an element of the crime for which the defendant was being tried but of which he was not ultimately convicted. *State v. Chyle*, 297 N.W.2d 409 (N.D.1980).

The presumption contained in North Dakota Pattern Jury Instruction 1313 seems to violate the directive of the United States Supreme Court as stated in *Sandstrom v. Montana, supra.*[8] The jury may interpret the challenged presumption to be conclusive. *See Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952). Likewise, the jury may interpret the challenged presumption as shifting the burden of persuasion. *See Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). A presumption which shifts the burden to the defendant of disproving an element of the crime charged violates the Fourteenth Amendment's requirement that the State prove every element of a criminal offense beyond a reasonable doubt. *Mullaney v. Wilbur, supra; In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977).

The State contends that the error was harmless error because Sheldon was ultimately convicted of reckless endanger-

---

**8.** Section 31–11–03(3), N.D.C.C., states:

31–11–03. *"Disputable presumptions.*–All presumptions other than those set forth in section 31–11–02 are satisfactory if uncontradicted. They are denominated disputable presumptions and may be contradicted by other evidence. The following are of that kind:

. . . . .

3. That a person intends the ordinary consequences of his voluntary act."

Rule 301(a), N.D.R.Ev., states:

*"(a) Effect....* A party against whom a presumption is directed has the burden of proving that the nonexistence of the presumed fact is more probable than its existence."

ment, which does not require the mental state of intent. In *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), the United States Supreme Court stated that an unconstitutional jury instruction on an element of the crime can never constitute harmless error. However, we believe that the Supreme Court's directive applies to the situation where the unconstitutional jury instruction was given on an element of the crime for which the defendant was convicted. In the instant case, the defendant, Sheldon, was convicted of the crime of reckless endangerment. The challenged instruction was given in connection with the charge of attempted murder and not in connection with the charge of reckless endangerment. Thus, we believe that the harmless–error doctrine applies in the instant case.

In *Chapman v. California*, 386 U.S. 18, 22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967), *rehearing denied* 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241, the United States Supreme Court stated that some constitutional errors may constitute harmless errors. The Supreme Court stated:

"All of these rules, state or federal, serve a very useful purpose insofar as they block setting aside convictions for small errors or defects that have little, if any, likelihood of having changed the result of the trial. We conclude that there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction."

The instruction on intent which contained the challenged presumption had no effect upon the State's burden of proving every

essential element of the offense of reckless endangerment beyond a reasonable doubt.[9] Thus, the challenged presumption in the instruction on intent did not have any effect upon the charge of reckless endangerment. The district court properly instructed the jury on the necessary elements of the crime of reckless endangerment.[10] We conclude that the district court's error in including the challenged presumption in the instruction on intent was harmless error under Rule 52(a) of the North Dakota Rules of Criminal Procedure. *See also State v. Hager*, 271 N.W.2d 476 (N.D.1978).

### IV.

Sheldon contends that the form of the verdict submitted by the district court to the jury was a special verdict. The district court's form of the verdict stated:

"VERDICT OF GUILTY OF RECKLESS ENDANGERMENT

"We, the jury duly empaneled and sworn to try the above–entitled action, do find the defendant, Gary Sheldon, GUILTY of the offense of reckless endangerment.

"At the time of the offense did the circumstances manifest an extreme indifference by the defendant to the value of human life?

"Yes_____ No_____"

█ A special verdict is one in which the jury finds all the facts and then refers the case to the court for a decision on those facts. It is rendered in lieu of a general verdict and contains findings on all material issues in the case. Special interrogatories, on the other hand, are propounded as to selected issues of fact, and answers to them

---

**9.** The district court's instruction stated:

"In the event you do not find the defendant guilty of any of the foregoing charges, then you may find the defendant guilty of reckless endangerment if the evidence supports such a charge. However, in order to find the defendant guilty of reckless endangerment, you must find from the evidence and beyond a reasonable doubt that at the time and place stated in the charge the defendant committed the crime of reckless endangerment."

**10.** The district court's instruction also stated:

"A person is guilty of the offense of reckless endangerment if he recklessly creates a substantial risk of serious bodily injury or death to another. It is a more serious charge if the circumstances manifest an extreme indifference to the value of human life. There is risk within the meaning of this law if the potential for harm exists, whether or not a particular person's safety is actually jeopardized."

are given in connection with, and not in substitution of, a general verdict. The form of the verdict given in the instant case was not a special verdict because the jury decided whether or not Gary Sheldon was guilty of the crime of reckless endangerment.

Rule 31(e), N.D.R.Crim.P., lists four instances where the jury must answer interrogatories in addition to returning a verdict. *See State v. Bartkowski*, 290 N.W.2d 218 (N.D.1980). Although subdivision (e) of Rule 31 is labeled *"Special verdicts"*, it is clear that this subdivision does not deprive the jury of its function of determining the facts of the case. To ask the jury special questions might be said to infringe upon the power of the jury to arrive at a general verdict without having to support it by reasons; or upon the power of the jury to follow or not to follow the instructions of the court. However, Sheldon was not deprived of his Sixth Amendment right to a jury trial by the question posed to the jury in the form of the verdict. *See United States v. James*, 432 F.2d 303 (5th Cir. 1970); *State v. Heald*, 307 A.2d 188 (Me. 1973). The interrogatory was not designed to coerce the jurors into rendering a guilty verdict. We conclude that the constitutional concept of trial by jury was not violated by the interrogatory submitted to the jury in this case because the interrogatory was necessary to distinguish whether Sheldon was guilty of a felony or a misdemeanor under the reckless endangerment statute.[11] Depending upon the answer, the interrogatory might even have been helpful to Sheldon. Under § 12.1–17–03, N.D.C.C., the offense of reckless endangerment is a class C felony if the circumstances manifest an extreme indifference to the value of human life. In all other instances the offense is a class A misdemeanor. *See State v. Kroeplin*, 266 N.W.2d 537 (N.D.1978), for the requirements of proof that must be met in proving reckless endangerment.

## V.

Sheldon alleges that the jury was guilty of misconduct when it arrived at the verdict of guilty to the charge of reckless endangerment. In support of his argument, Sheldon submitted the affidavits of six of the jurors who returned the verdict of guilty of reckless endangerment. The affidavits recited that the jurors were surprised by the punishment accompanying the conviction of reckless endangerment. None of the affidavits recited that the jurors did not want to return a guilty verdict against Sheldon.

The State responds to the Sheldon argument with the argument that a jury cannot impeach its verdict. The common–law rule against allowing jurors to impeach their verdict was first formulated by Lord Mansfield in the case of *Vaise v. Delaval.*[12] Rule 606(b) [13] N.D.R.Ev., contains the rule against impeachment of jury verdicts. Rule 606(b) operates to prohibit testimony as to certain conduct by the jurors which has no verifiable outward manifestations. Thus, testimony that a juror misunderstood the court's instructions is excluded from evidence. *Walker v. United States*, 298 F.2d 217 (9th Cir. 1962); *United States v. Chereton*, 309 F.2d 197 (6th Cir.

---

11. *See* 8A Moore's Federal Practice–Criminal Rules ‟ 31.02[3].

12. 1 TR 11, 99 Eng.Reprint 944 (1785).

13. "RULE 606–COMPETENCY OF JUROR AS WITNESS

.    .    .    .    .

"*(b) Inquiry into validity of verdict or indictment.* Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, but a juror may testify on the questions whether extraneous prejudicial information was improperly brought to the jury's attention, whether any outside influence was improperly brought to bear upon any juror, or whether the verdict of the jury was arrived at by chance. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes." N.D.R. Ev., Rule 606(b).

*See also* Weinstein's Evidence ‡ 606[04].

1962), *cert. den.* 372 U.S. 936, 83 S.Ct. 883, 9 L.Ed.2d 767 (1963). The affidavits of the jurors point out that the jurors were convinced that Sheldon had committed an offense but the jurors were mistaken regarding the punishment imposed for a conviction of the crime of reckless endangerment. Sentencing is not within the province of the jury.

■■■ The United States Supreme Court summarized the rules concerning a juror's right to impeach his verdict in *Stein v. New York*, 346 U.S. 156, 73 S.Ct. 1077, 97 L.Ed. 1522 (1952). Public policy does not favor public or private post–trial inquisition of jurors as to how they reasoned because our judicial system could not tolerate the harassment and intimidation which would result from such a practice.[14] Thus, courts cannot receive evidence of a compromise in a criminal case whereby some jurors exchanged their convictions on one issue in return for concessions by other jurors on different issues. *Hyde v. United States*, 225 U.S. 347, 32 S.Ct. 793, 56 L.Ed. 1114 (1911). If evidence could be secured concerning the jurors' deliberations, the consequent investigation could serve to restrict the jurors' freedom of discussion.

■■■ The departure of the jury from the instructions given in a case is an inseparable risk from the nature of jury secrecy and independence. Rule 606(b), N.D.R.Ev., does provide that a juror may testify on questions concerning whether or not extraneous prejudicial information was brought to the jury's attention, whether or not any outside influence was improperly brought to bear upon any juror, or whether or not the jury verdict was arrived at by chance. The affidavits of the jurors did not disclose any instance of misconduct which falls within the scope of the exceptions to the general rule stated in Rule 606(b), N.D.R.Ev. One juror's affidavit recited a statement made by the bailiff concerning the manner in which the Sheldon family was running into and out of the courtroom. The statement by the bailiff was not of such a nature as to warrant a reversal of the conviction on the ground of jury misconduct. *See Parker v. Gladden*, 385 U.S. 363, 87 S.Ct. 468, 17 L.Ed.2d 420 (1966). We conclude that the affidavits of the jurors did not fall within the province of Rule 606(b) which excludes evidence of jury deliberations. Thus, the district court properly refused to consider the affidavits submitted by the six jurors.

■■■ In no instance did the affidavits of the jurors disclose evidence of partiality and we are not called upon to review a contention by Sheldon that the jury was partial. *State v. Olson*, 274 N.W.2d 190 (N.D.1978). Sheldon does contend that the jury may have arrived at their verdict after a brief intermission. The jury deliberated for approximately ten hours and rendered the verdict of guilty one–half hour after a juror had returned from a brief intermission. The matter is properly within the discretion of the trial judge and, in the absence of evidence indicating prejudice or partiality, we cannot conclude that the district court abused its discretion.[15] The presumption is that the jury performed its duties in accordance with the law. *State v. Graber*, 77 N.D. 645, 44 N.W.2d 798 (1950).

### VI.

■■■ The final two contentions raised by Sheldon concern whether or not the district court committed error when the court denied Sheldon's motions for acquittal and for a new trial and whether or not the evidence was sufficient to support the jury's verdict of guilty of the offense of reckless endangerment. Under Rule 29(a), N.D.R.Crim.P., the motion for a judgment of acquittal is properly granted only if the evidence is insufficient to sustain a conviction of the offense. A motion for a new trial on the ground of insufficiency of the evidence is a matter resting within the

---

14. See *Miller v. United States*, 403 F.2d 77 (2d Cir. 1968), *modified on other grounds*, 411 F.2d 825 (2d Cir. 1969).

15. *See* Annot. 91 A.L.R.2d 1238. Effect of verdict in criminal case of haste or shortness of time in which jury reached its verdict.

sound discretion of the trial court. The trial court's decision will not be set aside unless an abuse of discretion is shown. *State v. Holy Bull*, 238 N.W.2d 52 (N.D. 1975). Where this court is faced with the issue of whether or not the evidence is sufficient to sustain the conviction, we will view the evidence in the light most favorable to the verdict. *State v. Heasley*, 196 N.W.2d 896 (N.D.1972); *State v. Goeller*, 264 N.W.2d 472 (N.D.1978), *cert. den.* 439 U.S. 953, 99 S.Ct. 350, 58 L.Ed.2d 344.

After a careful review of the record, we conclude that the district court did not commit error in denying Sheldon's motions for acquittal and for a new trial. Abundant evidence exists upon which the jury could base its verdict. When we couple the fact that ample evidence exists by which the jury could base its verdict of guilty with the requirement that we view the evidence in the light most favorable to the verdict, we conclude that the evidence was sufficient to sustain the conviction.

For reasons stated in this opinion, we affirm the judgment.

ERICKSTAD, C. J., PEDERSON and SAND, JJ., and McGUIRE, District Judge,* concur.

---

* McGUIRE, District Judge, sitting in place of VANDE WALLE, J., disqualified.

** Application for Writ of Certiorari has been filed in United States Supreme Court.