STATE of North Dakota, Plaintiff
and Appellee,

v.

Darrell ROBIDEAUX, Defendant
and Appellant.

Cr. No. 920033.

Supreme Court of North Dakota.

Nov. 24, 1992.

Sonja Clapp (argued), Asst. State's Atty., Grand Forks, for plaintiff and appellee.

Pearson, Christensen, Larivee and Fischer, Grand Forks, for defendant and appellant; argued by Alan J. Larivee. Appearance by Darrell Robideaux.

MESCHKE, Justice.

Darrell Robideaux appealed a criminal judgment that sentenced him to five years of imprisonment upon a jury verdict finding him guilty of negligent homicide. We affirm.

Near 1:30 a.m. on August 25, 1990, Brent Fuller was struck and killed by a car driven by Robideaux. On January 3, 1991, Robideaux was charged in district court with violating NDCC 12.1–16–02 by manslaughter. On May 12, 1991, Robideaux pleaded guilty in county court to violating NDCC 39–08–04 by leaving the scene of an acci-dent causing death. The county court sentenced Robideaux to 365 days in jail with credit for one day served, suspended 335 days, and imposed an administrative fee of $125.

Robideaux moved to dismiss the manslaughter charge for double jeopardy. The trial court denied the motion and Robideaux appealed. We dismissed Robideaux's appeal because the denial of his motion was not appealable. *State v. Robideaux*, 475 N.W.2d 915 (N.D.1991) [*Robideaux I*]. We did, however, advise Robideaux that his prosecution for manslaughter would not constitute double jeopardy.

After a trial, the jury acquitted Robideaux of manslaughter and found him guilty of negligent homicide. Robideaux appeals, and raises questions about (1) double jeopardy, (2) the trial court's allowance of an amendment to the information, (3) the trial court's denial of his motion for a continuance, (4) the trial court's consideration of his conviction for leaving the scene in sentencing him for negligent homicide, and (5) the prosecutor's use of allegedly perjured testimony.

Relying on *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), Robideaux contends that the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution barred his prosecution for negligent homicide after he pleaded guilty to the misdemeanor charge of leaving the scene of an accident. Robideaux urges us to reconsider our double jeopardy analysis in *Robideaux I* and overturn his conviction for negligent homicide.

On October 3, 1987, Thomas Corbin drove his automobile across the double yellow line of a highway and struck two oncoming vehicles, resulting in the death of one driver and serious injury to her passenger. While being treated for his own injuries, Corbin was issued two traffic tickets—one for driving while intoxicated, and one for failing to keep right of the median. Corbin pleaded guilty to the traffic tickets on October 27, 1987. For these violations, Corbin was sentenced on November 17,

1987, to a $350 fine, a $10 surcharge, and a 6–month license revocation.

Soon after, on January 19, 1988, a grand jury indicted Corbin for reckless manslaughter, second-degree vehicular manslaughter, criminally negligent homicide, third-degree reckless assault, and driving while intoxicated. The prosecution filed a bill of particulars indicating that it would prove the homicide and assault charges by showing (1) operating a motor vehicle in an intoxicated condition, (2) failing to keep right of the median, and (3) driving too fast for the weather and road conditions. Corbin moved to dismiss the indictment. The New York trial court denied the motion. Corbin then sought a writ of prohibition barring prosecution on all counts of the indictment. The Appellate Division denied the petition, but the New York Court of Appeals reversed. The United States Supreme Court granted certiorari.

In *Grady v. Corbin,* 495 U.S. at 521–523, 110 S.Ct. at 2093–2094, 109 L.Ed.2d at 564–566, the United States Supreme Court affirmed the judgment of the New York Court of Appeals, holding that the subsequent prosecution was barred by the Double Jeopardy Clause:

> [T]he Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted. This is not an "actual evidence" or "same evidence" test. The critical inquiry is what conduct the State will prove, not the evidence the State will use to prove that conduct. As we have held, the presentation of specific

evidence in one trial does not forever prevent the government from introducing that same evidence in a subsequent proceeding. See *Dowling v. United States,* 493 U.S. [342], 110 S.Ct. 668, 107 L.Ed.2d 708 (1990). On the other hand, a State cannot avoid the dictates of the Double Jeopardy Clause merely by altering in successive prosecutions the evidence offered to prove the same conduct. . . .

> Applying this analysis to the facts of this case is straightforward. . . . By its own pleadings, the State has admitted that it will prove the entirety of the conduct for which Corbin was convicted—driving while intoxicated and failing to keep right of the median—to establish essential elements of the homicide and assault offenses. Therefore, the Double Jeopardy Clause bars this successive prosecution, and the New York Court of Appeals properly granted respondent's petition for a writ of prohibition. This holding would not bar a subsequent prosecution on the homicide and assault charges if the bill of particulars revealed that the State would not rely on proving the conduct for which Corbin had already been convicted (*i.e.,* if the State relied solely on Corbin's driving too fast in heavy rain to establish recklessness or negligence).

The Double Jeopardy Clause was thus applied to prohibit successive prosecutions for the "same conduct."

*Grady v. Corbin* has met with a mixed reception in law review commentaries. Views range from one that *Grady* clarifies an area of confusion [1] to one that *Grady's* "same conduct" test should be dismantled.[2]

---

1. *See* J. Herrick, *Double Jeopardy Analysis Comes Home: The "Same Conduct" Standard in Grady v. Corbin,* 79 Ky.L.J. 847, 865–866 (1990–91):

 > As a matter of pure theoretical soundness, the ruling in *Grady v. Corbin* makes reasonably coherent legal sense out of the existing precedent. . . . On the whole, the case begins to alleviate the confusion in a doctrinal area once described by Justice Rehnquist as a "Sargasso Sea." . . . From a standpoint of coherence and convenience, *Corbin* appears to pass juridical muster.

2. *See* S. Barton, *Grady v. Corbin: An Unsuccessful Effort to Define "Same Offense",* 25 Ga. L.Rev. 143, 160 (1990): "Justice Scalia's assertion that the *Grady* test will thoroughly confuse judges seeking to interpret it, therefore, appears accurate." The same author continued at page 166:

 > Both the "same transaction" and "same evidence" tests for double jeopardy, therefore, are preferable to the "same conduct" test established by *Grady v. Corbin.* Regardless of which approach it ultimately chooses to adopt, however, the Court should affirmative-

In *United States v. Felix,* —— U.S. ——, ——, 112 S.Ct. 1377, 1385, 118 L.Ed.2d 25, 37 (1992), Chief Justice Rehnquist recently said:

> It appears that while *Grady* eschewed a "same evidence" test and *Garrett [v. U.S.,* 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985)]* rejected a " 'single transaction' " test, ... the line between those tests and the "same conduct" language of *Grady* is not easy to discern.

Regardless of the varying viewpoints about *Grady's* contribution to double-jeopardy jurisprudence, the *Grady* precedent should caution a prosecutor against acting too hastily to charge relatively minor offenses that may have occurred in the course of the possible commission of a major offense.

We considered *Grady* in reaching our advisory conclusion in *Robideaux I* that the Double Jeopardy Clause did not bar prosecution of Robideaux for manslaughter after he had pleaded guilty to leaving the scene of an accident. In *Robideaux I,* we wrote:

> In the case before us, the conduct underlying Robideaux's prior conviction under section 39–08–04, N.D.C.C., was that of unjustifiably leaving the scene of an accident that involved injury or death. There is no evidence that this conduct of leaving the scene is to be used to prove any of the elements of manslaughter.... The conduct of leaving the scene of an accident doesn't prove that Robideaux was reckless in driving. Likewise, the conduct of leaving the scene of an accident doesn't prove the element of causation. There is nothing which indicates that the prosecution is going to show that the death occurred *because* Robideaux left the scene of the accident. In a real sense, the two crimes are transactionally separate and distinct. The crime of leaving the scene of an accident can only occur after an accident has occurred.... The fact that the State may well prove that there was an accident resulting in death for both offenses is not determinative of the issue.

(Emphasis in original.) 475 N.W.2d at 917–918. We concluded "that the conduct underlying Robideaux's conviction for leaving the scene of an accident is not the same conduct that the State will rely on to prove the elements necessary to support a manslaughter conviction." *Id.* at 918.

■ After further study of *Grady,* we reconsider *Robideaux I* in light of the record of Robideaux's trial. We adhere to our conclusion that Robideaux's conviction for leaving the scene did not bar his subsequent prosecution for different conduct.

Despite the broad advice in *Robideaux I* that the State should not use evidence of Robideaux's leaving the scene of the accident to prove manslaughter, Robideaux contends in his brief that "the State used the same conduct in its prosecution of Darrell Robideaux for Negligent Homicide as it established in its prosecution of Leaving the Scene of an Accident Causing Death." At oral argument, Robideaux asserted that evidence of his leaving the scene of the accident was presented to the jury in the sense of flight being evidence of guilt. In our view, the record does not support those assertions.

At the beginning and at the end of her opening statement, the prosecutor stated that, after Robideaux struck and killed Fuller, "he left." The prosecutor did not mention that Robideaux had pleaded guilty to leaving the scene of an accident causing death. Testifying during the State's case in chief, an insurance agent read part of a loss report that he prepared from information furnished to him by Robideaux's attorney at the time the report was prepared on August 27, 1990: "... vehicle number one, 'struck Brent Fuller, stopped, check for pulse, yelled for help, realized he was dead, got in car and drove home.' " No other prosecution witness testified that Robideaux left the scene of the accident or mentioned his conviction for leaving the scene of the accident. The prosecution's references to Robideaux's leaving the scene were few, brief, and indirect. We are unable to conclude that the prosecutor used evidence of Robideaux's conduct in

ly dismantle Grady's "same conduct" test be- fore it self-destructs in the lower courts.

leaving the scene of the accident to prove negligent homicide.

Rather, Robideaux himself emphasized his conduct of leaving the scene of the accident. In his opening statement, Robideaux's counsel told the jury:

> ... but all of a sudden Brent Fuller is right in front of his car and Darrell hit Brent Fuller. He has never denied hitting Brent Fuller. Darrell stopped his car, got out of his car, looked at Mr. Fuller on the ground and was going to go call for help, and he remembers standing there screaming, "Oh, God, help us. Help us." He got back in his car, he started to go call for help and that's the last thing he remembers of what happened that evening.... He just apparently went into shock.

> \* \* \* \* \* \*

> We agree that it isn't the best thing to have left the scene of the accident. Darrell admits that that was something he shouldn't have done. However, he says, and he'll testify, that his intention was to go get help and then he just blacked out. He doesn't remember what happened on August 25, 1990....
> In March of last year, through the normal process of time, Mr. Robideaux plead guilty to leaving the scene of the accident. He admits that he struck Mr. Fuller. He admits that he should not have left the scene and he's accepted the responsibility for that. He's plead guilty and he's been sentenced for that crime.

> \* \* \* \* \* \*

> Frankly, it's kind of hard to believe that somebody would stop at an accident, would find out that somebody was injured and maybe killed, start off to go call for help and never do. But when you place yourself in Mr. Robideaux's situation as he describes it, and other witnesses will describe that he told them, that it was like Mr. Fuller came out of the air, dropped out of the sky.

While Robideaux was testifying, his counsel asked him to identify Defendant's Exhibit Number 92. Robideaux identified it as "a Criminal Judgment where I pled guilty to leaving the scene of an accident involving death." Robideaux's counsel then offered the exhibit and it was received in evidence.

■ Robideaux's references to his leaving the scene of the accident were greater in number, lengthier, and more direct than those of the prosecutor. Furthermore, Robideaux's references explicitly showed that he had been convicted of the crime of leaving the scene. Robideaux is thus in a poor position to complain about evidence that he left the scene of the accident and was convicted of that crime. Robideaux's "counsel is in effect arguing that he may avail himself of probable errors which he helped to perpetrate." *State v. Sheldon,* 301 N.W.2d 604, 611 (N.D.1980). A defendant cannot complain of errors that he caused.

Robideaux contends that the trial court erred in allowing the State to amend the information at 5 p.m. the day before the trial started. The amendment added negligent homicide as an alternative to the manslaughter charge. We first analyze the effect of the amendment itself, and then we address the timing of the amendment in reviewing the trial court's denial of Robideaux's motion for a continuance.

■ Our analysis of the amendment of the information is guided by NDRCrimP 7(e) and 31(c). Rule 7(e) says:

> The court may permit an information to be amended at any time before verdict or finding, if no additional or different offense is charged and substantial rights of the defendant are not prejudiced.

Rule 31(c) says:

> The defendant may be found guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein if the attempt is an offense.

"An information may appropriately be amended to charge a lesser included offense of the offense initially charged, provided substantial rights of the defendant are not prejudiced." *Government of Virgin Islands v. Bedford,* 671 F.2d 758, 765 (3rd Cir.1982). A lesser included offense "would never constitute a 'different' of-

fense, and seldom an 'additional' offense within the meaning of Rule 7(e) [FRCrimP]." *Id.* The primary purpose of NDRCrimP 31(c), and of its source in FRCrimP 31(e), is to aid the prosecution when it fails to prove all of the elements for the offense charged. *Sheldon,* 301 N.W.2d at 608; 3 C. Wright, *Federal Practice and Procedure: Criminal 2d* § 515 (1982). Either the State or the defendant may request instructions on lesser included offenses. *Sheldon* at 608. An information notifies a defendant that he might have to defend against lesser included offenses. *Id.*

█ Robideaux "was 'informed of the nature and cause of the accusation' against him as required by the 6th Amendment to the United States Constitution." *State v. Woehlhoff,* 473 N.W.2d 446, 448 (N.D. 1991). Negligent homicide is a lesser included offense of manslaughter. *State v. Wiedrich,* 460 N.W.2d 680, 685 (N.D.1990). The amendment did not charge a different offense. The amendment charged an alternative, but not an additional, offense. The first information notified Robideaux that he might have to defend against lesser included offenses. Robideaux has not shown that the amendment prejudiced any substantial rights. We conclude that the trial court did not abuse its discretion in allowing the prosecution to amend the information to add an alternative charge of negligent homicide.

█ On the morning after the trial court granted the State's motion to amend the information, Robideaux moved for a continuance "to allow additional preparation for the trial as a result of the change and the culpability requirements of the Amended Information." Robideaux contends that the trial court erred in denying a continuance. In *State v. Kunkel,* 452 N.W.2d 337, 339 (N.D.1990), we wrote: "Ordinarily, the trial court's decision to grant or deny a motion for continuance will not be set aside on appeal absent an abuse of discretion."

"[I]t is significant that the defendant could not claim surprise." *Government of Virgin Islands v. Bedford,* 671 F.2d at 765. Although the trial court did not grant the State's motion to amend the information until the eve of trial, the State actually filed the amended information two weeks before, and gave Robideaux's attorney a copy at that time. Thus, Robideaux had two weeks' notice of the State's intention to amend the information, and of the possibility that the trial court might allow the amendment.

Robideaux did not support his motion for a continuance with any arguments not already presented in opposing the State's motion to amend the information.[3] Robideaux offered to the trial court "no argument in support of his continuance motion, other than to express surprise and to assert a generalized need for more time." *State v. Banks,* 113 Idaho 54, 740 P.2d 1039, 1044 (App.1987). Robideaux did not identify "how such additional time would have been utilized." *Id.* We are not persuaded that the trial court abused its discretion in denying Robideaux's motion for a continuance.

█ Robideaux contends that, in sentencing him for negligent homicide, the trial court erred in considering Robideaux's conviction for leaving the scene of an accident causing death. Just before imposing sentence, the trial court said:

> This is [a] very serious offense, and the Defendant's conduct after the offense of leaving the scene, never reporting the incident, I realize he's already been sentenced to 30 days for that charge of leaving the scene, warrants a significant sentence in this case.

Robideaux argues:

> It appears from the words of Judge Medd that he was using the prior conviction for leaving the scene not only to enhance the penalty for negligent homicide, but also to punish Mr. Robideaux

---

**3.** In opposing the amendment, Robideaux argued that (1) "it creates some surprise"; (2) it "changes the complexion of the entire trial"; and (3):

> [W]e've been preparing the case to deal with it as a manslaughter case. And the culpability

of a manslaughter charge is ... reckless and recklessly caused the death of another.

In the negligent homicide case, it's a lesser culpability, negligently caused the death of another, and that's why we're objecting at this point to the Amended Information.

**216**

additionally for the prior conviction. It is patently unjust that this should have occurred.

It is apparent to us that Judge Medd was not referring to the offense of leaving the scene, but to Robideaux's separate conduct in failing to report the accident.

 In imposing a sentence of imprisonment, a trial court may "consider matters subsequent to the commission of the offense." *State v. Sheldon*, 312 N.W.2d 367, 372 n. 1 (1981). *See also* NDCC 12.1–32–04(14). (Cooperation with law enforcement authorities is a factor to be accorded weight in determining the desirability of imprisonment). The trial court did not abuse its discretion in considering Robideaux's failure to report the accident after he left the scene.

 Robideaux contends that the prosecution's introduction of allegedly perjured testimony by Bob Yanish denied him due process, and that "counsel for the State knew or should have known that Bob Yanish was lying before she had him testify." Yanish testified that (1) he sat in front of Robideaux at the races at the Grand Forks Speedway the evening that Fuller was killed; (2) we "watched the races and drank beer"; (3) Andy Green was sitting in the same area; and (4) that he knew "for sure" that Robideaux had two liters of beer. On cross-examination, Yanish testified that Robideaux "was under the influence of alcohol." Andy Green, a defense witness, testified that he sat beside Robideaux at the races and that he did not see Bob Yanish there. On cross-examination by the prosecutor, Green agreed with the prosecutor that either he or Yanish was lying. From this bare conflict in the testimony, we are unable to conclude that Yanish's testimony was false or that the prosecuting attorney "knew or should have known that Bob Yanish was lying before she had him testify."

Affirmed.

ERICKSTAD, C.J., and LEVINE, JOHNSON VANDE WALLE, JJ., concur.