STATE *ex rel* WILLIAM LARABEE *vs.* OSCAR G. BARNES.

Opinion filed May 9th, 1893.

### Constitutional Prohibition—Legally Adopted.

Congress by an act approved February 22nd, 1889, known as the "Enabling Act," directed the people in what is now the State of North Dakota to elect delegates to a constitutional convention, which convention should formulate a constitution to be submitted to the qualified electors for their adoption, and provided for the submission at the same time of separate articles or ordinances, and required for their adoption a "majority of the legal votes cast." Article 20 of our constitution, known as the "Prohibition Article," was so submitted for adoption. At the same time, under a provision of the proposed constitution, a full set of state officers was elected. Said article 20 received a majority of all the votes cast upon the question of the adoption of the same, and upon the question of the adoption of the constitution, but did not receive a majority of the votes cast for governor. *Held*, that said article 20 was legally adopted.

### Prohibition Statute—Legally Adopted—Title of Act—Unusual Punishments.

Said enabling act provided that the state officers should exercise all the functions of their offices when North Dakota was admitted as a state, and that the legislature might assemble, organize, and elect two United States senators; and § 17 of the schedule to the constitution required the governor, as soon as qualified, to issue his proclamation convening the legislature within a specified time for the purpose of electing such senators. Section 41 of the state constitution provides that the term of office of members of the legislature shall begin on the first Tuesday in January following their election, and § 53 provides that the legislative assembly shall meet on the first Tuesday after the first Monday in January in the year next following the election of the members. The governor, by proclamation, convened the legislature at a time prior to the first Tuesday in January next succeeding the election, for the purpose of electing said United States senators, and "for the performance of such other legislative duties as may be in accordance with the provisions of said constitution." The legislature convened pursuant to such proclamation on November 19th 1889, and at once proceeded to exercise general legislative functions, and passed Ch. 110, known as the "Prohibition Statute," and the same was approved December 19th, 1889. *Held*, that the legislature so convened had full power to enact said statute. Said act is not vulnerable to the constitutional objections that its object is not fully expressed in the title, or that it contains more than one subject, or that it is not uniform in its operation, or that it inflicts cruel and unusual punishment.

Original application in the name of the state at the relation of Wm. Larabee against Oscar G. Barnes, Sheriff of Cass County, for the release of relator on habeas corpus. Writ granted, and

case heard upon objection to the sufficiency of the petition.
Judgment for defendant.

*J. W. Tilly*, (*H. Steenerson*, of counsel) for relator.

Article 20 of the constitution is void because it was never approved by the qualified voters of the state as required by § 8, of the enabling act.   The vote as canvassed and certified was "for prohibition" 18,552, against 17,393.   The total vote cast for governor was 38,098 showing at least that number of qualified voters present and voting, and 448 less than a majority voted for article 20.   The words "qualified voters of said state" mean the qualified voters voting at the election:   *Peo.* v. *Warfield*, 20 Ill. 163; *Peo.* v. *Gamer*, 47 Ill. 246; *Peo.* v. *Wiout*, 48 Ill. 263; *Bridgeport* v. *R. R. Co.*, 15 Conn. 475; *St. Joseph Tp.* v. *Rogers*, 16 Wall. 644; *Taylor* v. *Taylor*, 10 Minn. 107; *Bayard* v. *Klenge*, 16 Minn. 221; *Everet* v. *Smith*, 22 Minn. 53; *Walnut* v. *Wade*, 103 U. S. 683; *State* v. *Beched*, 34 N. W. Rep. 342; *State* v. *Babcock*, 22 N. W. Rep. 372.   The prohibition statute, Ch. 110, Laws 1890, was passed in December 1889, before the legislative assembly had any legislative power. The legislature of 1889 was called by proclamation of the governor for election of two United States senators.   The term of service of members of the legislative assembly begins on the first Tuesday in January next after their election.   Art. 2, § 41, Const. It is a primary requisite to the enactment of laws that there be a legal legislature.   In time and place the members entitled so to do must lawfully convene.   Tenants Case 3 Neb. 409; *State* v. *Judge*, 29 La. Ann. 223; *Gormly* v. *Taylor*, 44 Ga. 76; *Peo.* v. *Hatch*, 33 Ill. 151.   When convened in extra session and limited by the constitution to business for which the session was specially called, all acts passed relating to other subjects will be void. Southerland on Stat. Const. § 25; *Davidson* v. *Moorman*, 2 Heisik. 575; *Jones* v. *Theall*, 3 Nev. 233; *Speed* v. *Crawford*, 3 Met. (Ky.) 207.   This statute is void as inflicting excessive punishment. 1 Bish. Cr. Law 947; *State* v. *Driver*, 70 N. C. 423; *State* v. *Petty*, 80 N. C. 367; *ex-parte* Mitchell, 70 Cal. 1; *State* v. *Williams*, 77 Mo. 310; *State* v. *Durston*, 52 Ia. 635.

*W. H. Standish, Atty. Gen'l* and *C. A. Pollock*, for respondent.

So far as the adoption of article 20 of the constitution is concerned, all that is required is, that it shall be approved by a majority of all the votes cast on that subject at such election. Cooley Const. Lim. 770; *Gillespie* v. *Palmer*, 20 Wis. 572; Prohibition Amendment Cases, 24 Kan. 500; *Sanford* v. *Prentice*, 28 Wis. 358; *Green* v. *Weller*, 32 Miss. 650; *Dayton* v. *St. Paul*, 2 Minn. 400.

BARTHOLOMEW, C. J.   The relator was informed against in the Cass County District Court for violation of the provisions of the constitution and statutes of the state prohibiting the sale of intoxicating liquors.   He pleaded guilty, and was sentenced to the county jail of Cass County for the term of 90 days, and to pay a fine of $300.   To relieve himself from confinement under this sentence he procured a writ of habeas corpus from this court. The petition for the writ, with the exhibits attached, alleges, in substance, that such imprisonment is illegal, because the charge against relator does not state facts sufficient to constitute a public offense, in that the same is based upon article 20 of the constitution of the State of North Dakota, and upon Ch. 110 of the Laws of said state for 1890.   That said article 20, and the said act based thereon, are null and void, for the reason that said article was never adopted by the people of the state as required in the enabling act, hereinafter more particularly noticed; and for the further reason that said Ch. 110, was never passed by any legally constituted legislature, and that said chapter, independant of said article 20, is void, for the reason that the title does not embrace any object to prohibit the sale of intoxicating liquors, but only to prescribe penalties for its unlawful sale; and that the act violates § 61 of the state constitution, which provides that no bill shall embrace more than one subject, which shall be expressed in the title; and that said act violates both the federal and state constitutions, in that it inflicts cruel and unusual punishment.   The writ was served on the defendant, Barnes who is sheriff of Cass County,

and upon the return day defendant appeared in court with the prisoner, and entered a general demurrer to the petition. Relator bases his right to a release from imprisonment upon the following propositions: *First*, Article 20 of the constitution of the State of North Dakota, commonly known as the "Prohibition Article," was never adopted as a part of the constitution; *second*, Ch. 110, Laws 1890, was not enacted by a legally constituted legislature; *third*, said chapter violates the constitution of this state and of the United States.

To understand the points made under the first proposition it is necessary to state that the enabling act, approved February 22nd, 1889, under the terms of which North Dakota, South Dakota, Montana, and Washington became states, after providing for constitutional conventions to formulate constitutions, and the submission of such constitutions to a vote of the qualified electors of the proposed states, provides in § 8 that "at the elections provided for in this section the qualified voters of said proposed states shall vote directly for or against the proposed constitutions, and for or against any articles or propositions separately submitted. The returns of said elections shall be made to the secretary of each of said territories, who, with the governor and chief justice thereof, or any two of them, shall canvass the same, and, if a majority of the legal votes cast shall be for the constitution, the governor shall certify the result to the president of the United States, together with a statement of the votes cast thereon, and upon separate articles or propositions, and a copy of the said constitution, articles, propositions, and ordinances. And if the constitutions and governments of said proposed states are republican in form, and if all the provisions of this act have been complied with in the formation thereof, it shall be the duty of the president of the United States to issue his proclamation announcing the result of the election in each, and thereupon the proposed states which have adopted constitutions and formed state governments as herein provided shall be deemed admitted by congress into the Union, under and by virtue of this act, on an

equal footing with the original states, from and after the date of said proclamation." Section 24 of said act provides "that the constitutional conventions may by ordinance provide for the election of officers for full state governments, including members of the legislatures and representatives in the 51st congress; but said state governments shall remain in abeyance until the states shall be admitted into the Union, respectively, as provided in this act." The time and the manner of the election of such officers was left entirely in the hands of the several constitutional conventions. As a matter of fact, the constitutional convention of North Dakota did provide for the election of all state officers at the time of the vote upon the adoption of the constitution. An inspection of the returns of that election as certified by the proper canvassing board, and which are made a part of the petition herein, discloses that there were 35,548 votes cast for or against the adoption of the constitution, and 35,945 votes cast for or against the adoption of said article 20, of which 18,552 were in the affirmative and 17,393 in the negative. It thus appears that a majority of all the votes for or against said article were in the affirmative, and also that the affirmative vote for said article exceeded one-half of all the votes cast for or against the adoption of the constitution. But at said election there were 38,098 votes cast for governor, and the affirmative vote upon the adoption of said article 20 was less than one-half of the total vote cast for governor. Upon these facts it is urged upon us with great earnestness and force that a "majority of the votes cast," within the meaning of said § 8 of the enabling act, were not in favor of the adoption of said article 20, and hence the same was never adopted. This proposition cannot receive our assent and we will briefly state some of the reasons which irresistibly lead our minds to the opposite conclusion. Said § 8 of the enabling act requires (and the requirement is mandatory) that the proposed constitution, and any specific article that the constitutional convention may direct, be submitted to a vote of the people, and that any such specific article shall be voted upon separately, and that, if a

majority of the votes cast be in favor of the constitution, that fact shall be certified to the president of the United States, with a statement of the votes for and against the constitution and each specific proposition so separately submitted, together with a copy of the constitution and of any articles separately submitted; and from the data thus certified the president was required to determine whether or not the constitution was republican in form, and whether or not all the requirements of the enabling act had been complied with, and, if so, he was required to issue his proclamation admitting North Dakota as a state. Where, in this section, congress spoke of the votes cast, it had reference to votes cast upon the particular objects which it directed should be submitted to a vote of the qualified electors. Congress had no knowledge that any candidates for offices would be voted for at that same election, and the matter of electing officers was left under the exclusive control of the constitutional convention; and, further, it was the vote upon the constitution and the articles, if any, separately submitted, that was to be certified to the president; and, if by the use of the words "majority of legal votes cast" congress meant votes cast upon any subject other than those directed to be certified to the president, it would be obviously impossible for that official ever to determine whether or not the constitution had been legally adopted, and yet, under the act, the duty devolved upon him to determine that question at once. These considerations seem to us to conclusively establish that when congress used the words "majority of legal votes cast" it meant votes cast for or against the adoption of the constitution or of the articles separately submitted. Whether or not congress did not also intend that, in case the constitution was adopted, the separate articles should stand or fall upon their separate vote, we need not determine.

Chapter 110, Sess. Laws 1890, was enacted by our first state legislature undoubtedly in response to what the legislature regarded as its duty under the provisions of article 20 of the constitution, and to provide the necessary machinery for the proper

enforcement of that article. It is claimed that at the time of the passage of the act the legislature was not a lawful legislature, and was without power to exercise ordinary legislative functions. The act was approved December 19th, 1889. The constitution was adopted, and full state offices, including members of the legislature, elected, October 1st 1889. North Dakota became a state by virtue of the proclamation of the president on November 2nd, 1889. Section 24 of this enabling act provided, in case that the constitution was adopted, the legislature of the state might assemble, organize, and elect two senators of the United States, and that when the state was admitted the state officers should at once proceed to exercise the functions of their office. On November 4th, 1889, the governor elect of this state qualified. Section 17 of the schedule of the constitution provides: "The governor elect of the state, immediately upon his qualifying and entering upon the duties of his office, shall issue his proclamation convening the legislative assembly of the state at the seat of government, on a day to be named in said proclamation, and which shall not be less than fifteen nor more than forty days after the date of such proclamation. And said legislative assembly, after organizing shall proceed to elect two senators of the United States for the State of North Dakota; and at said election the two persons who shall receive a majority of all the votes cast by the said senators and representatives shall be elected such United States senators." On said 4th day of November, 1889, the governor issued his proclamation convening the legislature on November 19th, 1889, for the election of two United States senators, and "for the performance of such other legislative duties as may be in accordance with the provisions of said constitution." The legislature convened on said November 19th, and at once proceeded to the exercise of general legislative functions, and said Ch. 110 was passed and approved on December 19th, 1889 as stated. Section 41 of the constitution reads: "The term of service of the members of the legislative assembly shall begin on the first Tuesday in January next after their election." Section 53

reads: "The legislative assembly shall meet at the seat of gov-
ernment at 12 o'clock noon on the first Tuesday after the first
Monday in January in the year next following the election of the
members thereof." The contention is that the term of office of
the members of the legislature elected on October 1st, 1889, did
not begin until the first Tuesday in January, 1890. Such would be
true, if we could not look beyond or away from said § 41. But it
must be remembered that when the state was admitted all the
legislative offices were vacant unless filled by the newly-elected
officers; and unless so filled, however great the emergency, or
however imperative the necessity for action, the sovereign state
was without power to take legislative action from November 2nd,
1889, to the first Tuesday in January, 1890. We do not think any
such condition was contemplated. Section 24 of the enabling
act provides that, upon the admission of North Dakota as a state,
the officers of the state government shall proceed to exercise all
the functions of state officers. In the broad sense here used,
members of the legislature are state officers. This section as well
as § 17 of the schedule, required that the legislature should meet
and organize and elect United States senators. It is a solecism
to say that the persons thus called together were legislators for
one purpose, but not for all purposes. If they were not legisla-
tors they could not elect United States senators. If they were
legislators, being legally convened, and there being no restrictions
in the constitution or the enabling act, they possessed plenary
legislative powers. Cooley, Const. Lim. 187; *Morford* v. *Unger*,
8 Iowa, 82. As other plain provisions had been made respecting
the members and the first session of the first legislature, it is clear
that § § 41 and 53 of the constitution were intended to apply only
to subsequent legislatures, elected in the regular manner, and at
the regular time provided by law, and that said Ch. 110 is not
vulnerable to this attack.

All the questions pertaining to defects in the title of this act
in this case were raised and fully discussed in *State* v. *Haas*, 2 N.
D. 202, 50 N. W. Rep. 254. These same objections are here urged,

on the assumption that we would hold that said article 20 of the constitution had never been adopted. As we do not so hold we need add nothing to what we have said in the Haas case.

The next point made by relator—that the statute is unconstitutional, because it inflicts cruel and unusual punishment—hardly merits mention. It is legal history that all jurisdictions that have sought to prohibit or effectually control the sale of intoxicants have found it necessary from time to time to increase the rigor of the punishment for the violation of prohibitory and regulating laws. The matter is peculiarly of legislative cognizance, and we certainly see nothing in this statute that indicates that the legislature has provided for greater punishment than is requisite to the proper execution of the law. Nor does the fact that by such statute the sale of intoxicants for lawful purposes is confined to druggists render the statute open to the charge of want of uniformity in its operation. It applies to all persons who come within its terms, and no person is prohibited from placing himself within its terms. That is all the constitutional provision requires. *Trust Co.* v. *Whithed*, 2 N. D. 82, 49 N. W. Rep. 318. And it was clearly a wise and proper exercise of police power to so limit the sale. If all persons indiscriminately were permitted to keep and sell intoxicants for the enumerated lawful purposes it would be quite impossible, as all experience teaches, to prevent illegal sales. The statute increases the punishment for second and third offenses. This is urged as an objection to it, but no authority sustaining the objection is cited, nor do we find any. Such statutes are very common, and are universally upheld. Nor can we see that the fact that the increased punishment passes the arbitrary line fixed by the legislature between misdemeanors and felonies can in any manner change the principle. The writ must be discharged, and the relator remanded to the custody of the defendant, to be dealt with according to the terms of his commitment; and it is so ordered. All concur.

(55 N. W. Rep. 883.

NOTE—For other cases upon the liquor law, see, *State* v. *Swan*, 1 N. D. 5; *State* v. *Fraser*, 1 N. D. 425; *State* v. *Haas*, 2 N. D. 202.