STATE of North Dakota, Plaintiff and Appellee,

v.

Jerry F. VETSCH, Defendant and Appellant.

Cr. No. 1042.

Supreme Court of North Dakota.

May 22, 1985.

Vincent A. LaQua, States Atty. (argued), Fessenden, for plaintiff and appellee.

Thomas K. Schoppert (argued), Schoppert Law Firm, New Town, for defendant and appellant.

MESCHKE, Justice.

Jerry F. Vetsch appeals a jury trial conviction of driving a motor vehicle while under the influence of intoxicating liquor. We affirm.

On October 30, 1983, officer James Foley stopped a car which did not dim its lights while oncoming. With cause, Officer Foley arrested Vetsch for driving while under the influence. Officer Foley placed the time of the stop at shortly after 1:12 a.m. A person riding with him testified it was at 1:15 a.m. Vetsch claimed he was stopped at 12:55 a.m.

After much hesitation and two phone calls to his attorney, Vetsch consented to a blood test. Nurse Beth Huseth completed drawing the blood sample at 3:03 a.m. and filled out and signed an outdated certification form that was enclosed with the vial. Foley mailed the container with the vial and the form to the state toxicologist. The test report showed a blood alcohol concentration of .22 of one percent.

Vetsch moved to suppress the test result, claiming that the blood test had not been performed within two hours after driving. After an evidentiary hearing, the trial judge denied the motion, holding that the two-hour issue was for the jury and also that the test result was relevant evidence even if it was performed after two hours. The jury convicted Vetsch.

Vetsch argues three interrelated issues on admission and use of evidence arising under N.D.C.C. § 39–20–07, as amended in 1983:

"Upon the trial of any ... criminal action or proceeding arising out of acts alleged

to have been committed by any person while driving ... a motor vehicle while under the influence of intoxicating liquor ..., evidence of the amount of alcohol ... in the person's blood at the time of the act alleged as shown by a chemical analysis of the blood ... is admissible. For the purpose of this section:

(1) A person having, at the time, a blood alcohol concentration of not more than five one-hundredths of one percent by weight is presumed not to be under the influence of intoxicating liquor.

(2) Evidence that there was at that time more than ~~five-hundredths~~ five one-hundredths of one per cent ~~and less than ten-hundredths of one percent~~ by weight of alcohol in the person's blood is relevant evidence, but it is not to be given prima facie effect in indicating whether the person was under the influence of intoxicating liquor.

(3) A person having~~, at that time, ten-hundredths~~ a blood alcohol concentration of at least ten one-hundredths of one percent ~~or more~~ by weight ~~of alcohol in his blood shall be presumed to be~~ at the time of the performance of a chemical test within two hours after driving or being in physical control of a vehicle is under the influence of intoxicating liquor at the time of driving or being in physical control of a vehicle.

\* \* \* \* \* \*

5. The results of ~~such~~ the chemical analysis ~~shall~~ must be received in evidence when it is shown that the sample was properly obtained and the test was fairly administered, ~~provided that a~~ and if the test ~~of a person's blood, urine, breath, or other bodily substance and the result thereof~~ is ~~further~~ shown to have been performed according to methods ~~or~~ and with devices approved by the state toxicologist, ~~or both,~~ and by an individual possessing a certificate of qualification to administer the test issued by the state toxicologist....

\* \* \* \* \* \*

8. A signed statement from the nurse or medical technician drawing the blood sample for testing as set forth in subsection 5 is prima facie evidence that the blood sample was properly drawn and no further foundation for the admission of such evidence may be required." [1]

▮ Vetsch argues that the test was not fairly administered because the nurse filled out an outdated certification form prescribed by the state toxicologist. The nurse later filled out the newer form. She testified at the trial about the procedures which she used to draw and preserve the blood sample and that she had complied with all provisions of the revised form. We conclude that there was not sufficient evidence to rebut the presumption of regularity, under subparagraph 8 of § 39–20–07, N.D.C.C., that "the sample was properly obtained and the test was fairly administered, ... performed according to methods ... approved by the state toxicologist," N.D.C.C. § 39–20–07(5), in this instance by a "registered nurse acting at the request of a law enforcement officer," N.D.C.C. § 39–20–02. *State v. Hanson*, 345 N.W.2d 845 (N.D.1984). Accordingly, the trial court properly admitted the test results into evidence.

Pointing to the trial court's statement, in its memorandum opinion on the motion to suppress, that "[t]he Court cannot conclusively determine if the sample was taken within two (2) hours of defendant's driving ...", Vetsch argues that the test result should have been suppressed. We note that the trial court went on to say: "... but this in itself does not require the Court to suppress the evidence. Rather, the trier of fact must make a factual determination at trial whether or not the sample was or was not withdrawn within the two (2) hour limitation."

1. The deletions and additions shown in subsections 2, 3, 5 and 8 were made by amendments in 1983; 1983 Sess.Laws, Ch. 415, § 29.

Essentially, Vetsch's position is that the disputed two-hour issue of fact was a preliminary question concerning the competency and admissibility of the report to be determined by the court, not the jury. N.D.R.Ev., Rules 104(a), Preliminary Questions, and 1008, Functions of Court and Jury. There are reported cases, from other states with comparable statutes, so holding; e.g., *State v. Hanlon*, 70 Ohio Misc. 25, 435 N.E.2d 699 (Belmont County Court of Ohio 1982).

We believe that such an analysis is incomplete, because it overlooks related evidentiary rules and statutory provisions. Rule 104(b), N.D.R.Ev. says: "Whenever the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon ... the introduction of evidence sufficient to support a finding of the fulfillment of the condition." Thus, the key question is whether the conflicting evidence about whether the blood test was performed within two hours after driving goes to competency or to relevancy.

This analysis is outlined in the Explanatory Note to Rule 104, N.D.R.Ev., North Dakota Court Rules (1984), p. 394–395.

"Subdivision (b) provides that whenever a preliminary question is one of conditional relevancy of evidence, rather than its competency, the jury is to determine whether the preliminary fact exists. * * None of the problems which render preliminary questions of competency proper matters for the court's determination exist when questions of conditional relevancy are involved; the question is solely one of the probative value of evidence. Nor is there a need to shield from the jury evidence that is introduced and later found irrelevant because the conditional fact is found not to exist. The jury is likely to recognize the lack of probative force of the evidence once they have

found that the condition has not been met and, after being instructed not to consider that evidence, may be assumed to be able to ignore it." [2]

In North Dakota, the legislature in § 39–20–07 has explicitly prescribed that "... evidence of the amount of alcohol ... in the person's blood at the time of the act alleged as shown by a chemical analysis of the blood ... is admissible." The emphasis in subparagraph 5 is manifest: "The results of the chemical analysis *must* be received in evidence when it is shown ..." that it was properly obtained and fairly administered. Rule 26, N.D.R.Crim.P., mandates that "all evidence shall be admitted which is admissible under the statutes of this State, ..." Thus, it was for the court to make the preliminary determination of whether it was properly obtained and fairly administered for statutory admissibility. It was for the jury to assess its relevancy and weight.

There was evidence sufficient to support a finding that the blood test was performed within two hours. There was also contrary evidence in Vetsch's testimony. This conflicting evidence goes to the use and weight to be given to the test report, not its reliability. Therefore, we conclude that it was proper for the trial court to admit the test report to permit the jury to determine whether it was obtained within two hours and to properly assess its weight.

The trial court fairly instructed the jury on the effect of the statutory presumption of being under the influence if the test was performed within two hours after the driving and if the concentration was at least ten one-hundredths of one percent. See N.D.R.Ev., Rule 105, Limited Admissibility. The trial court's action in admitting the blood alcohol test report and instructions

**2.** See also N.D.R.Ev., Rule 1008, Functions of Court and Jury, and its Explanatory Note, North Dakota Court Rules (1984) p. 465:

"As explained in the explanatory note to Rule 104, preliminary questions of admissibility which involve the competence of proffered evidence are properly decided by the judge, as

these are questions whose answers are based upon broad policy considerations and the fulfillment of technical legal standards. Conversely, questions which are of relevance conditioned on fact are normally questions of probative value of the proffered evidence, and are logically to be decided by the jury."

on the use of the report were in accordance with the statute on submitting a presumed fact to the jury in a criminal case; N.D. C.C. § 12.1–01–03, subsections 4 and 5:

"4. When a statute establishes a presumption, it has the following consequences:

"a. If there is sufficient evidence of the facts which gave rise to the presumption, the presumed fact is deemed sufficiently proved to warrant submission of the issue to a jury unless the court is satisfied that the evidence as a whole clearly negates the presumed fact.

"b. In submitting the issue of the existence of the presumed fact to a jury, the court shall charge that, although the evidence as a whole must establish the presumed fact beyond a reasonable doubt, the jury may arrive at that judgment on the basis of the presumption alone, since the law regards the facts giving rise to the presumption as strong evidence of the fact presumed.

"5. When a statute declares that given facts constitute a prima facie case, proof of such facts warrants submission of a case to the jury with the usual instructions on burden of proof and without additional instructions attributing any special probative force to the facts proved."

Vetsch also argues that it was error for the trial court to permit the jury to consider the results of the test if the jury found that it was not performed within two hours. Relying on *State v. Bunnell*, 324 N.W.2d 418 (S.D.1982) and *State v. Hartman* 256 N.W.2d 131, 135 (S.D.1977), Vetsch asserts that such a test can go to the jury, other than for a statutory pre-

sumption, only if admitted through a qualified expert. *Hartman* said, and *Bunnell* reiterated:

"Furthermore, noncompliance with the implied consent statutes, although not making the test sample and test results inadmissible, results in a forfeiture of the statutory presumptions of SDCL 32–23–7. Therefore, the physiological effects of the blood alcohol content upon the defendant must be proven by the testimony of a properly qualified expert, [footnote omitted] not by statutory presumptions." *State v. Hartman*, 256 N.W.2d at 135.[3]

There is plausibility in Vetsch's argument. Rule 702, N.D.R.Ev. contemplates that "scientific, technical, or other specialized knowledge [which] will assist the trier of fact to understand the evidence or to determine a fact in issue" will ordinarily be presented through "a witness qualified as an expert by knowledge, skill, experience, training or education."

■ But, as we have already noted, our legislature has clearly mandated admissibility by its amendments to § 39–20–07 ("... is admissible ..."; "... must be received ..."). And our rules recognize the legislature's power to make evidence admissible; Rule 26, N.D.R.Crim.P.[4] Therefore, a test showing a result more than 0.05% is relevant evidence on whether the person is under the influence of intoxicating liquor, even without any presumptive effect.

We recently decided a closely related question adverse to Vetsch's position on this issue. In *State v. Kimball*, 361 N.W.2d 601 (N.D.1985), we held that a court, sitting without a jury, properly received a test result into evidence as bearing

---

**3.** It should be noted that *Hartman, supra,* did not suppress the test, carefully stating that "noncompliance ..., although not making the test sample and test results inadmissible, results in a forfeiture of the statutory presumptions ..." only. Similarly, *Bunnell, supra,* reversed a DUI conviction only because the court instructed on the presumption, and carefully stated that noncompliance with statutory requirements for the test "does not make the blood test results inadmissible." 324 N.W.2d at 420.

**4.** See also N.D.R.Ev., Rule 402: "All relevant evidence is admissible, except as otherwise provided by the Constitutions of the United States or the State of North Dakota, by any applicable Act of Congress, by statutes of North Dakota, by these rules, or by other rules adopted by the Supreme Court of North Dakota."

upon the defendant's violation of driving while under the influence of intoxicating liquor, notwithstanding that the State could not establish that the blood test was performed within two hours of driving.[5]

Our holdings on this issue are supported by *State v. Seidel*, 691 P.2d 678 (Ariz.1984), which held that a defendant was entitled to rely on the statutory admissibility of a test showing a 0.07% result, as an alternative to the method of admission under the Rules of Evidence based on scientific, technical or specialized knowledge. The reasoning of the Arizona Supreme Court is instructive:

"A.R.S. § 28-692.03(A) provides for admission of what is essentially scientific or technical opinion evidence without the necessity of 'a witness qualified as an expert' as required by Rule 702 and cases construing the rule. The case at bench thus requires us to determine whether the legislature may provide procedures for admission of evidence in a manner other than that prescribed by rules which this court promulgates pursuant to the power conferred on it by article 6, § 5(5).

That we possess the rule-making power does not imply that we will never recognize a statutory rule. We will recognize 'statutory arrangements which seem reasonable and workable' and which supplement the rules we have promulgated.

*Alexander v. Delgado*, 84 N.M. 717, 718, 507 P.2d 778, 779 (1973). However, when a conflict arises, or a statutory rule tends to engulf a general rule of admissibility, we must draw the line. The legislature cannot repeal the Rules of Evidence or the Rules of Civil Procedure made pursuant to the power provided us in article 6, § 5. *Ammerman v. Hubbard Broadcasting, Inc.* [89 N.M. 307, 551 P.2d 1354] *supra; cf. State v. Herrera*, 92 N.M. 7, 582 P.2d 384 (1978).

The question, then, is whether A.R.S. § 28-692.03 is only an alternative method of admitting breath test evidence, or one that flatly contradicts the procedures adopted by the Rules of Evidence. * * * The procedures followed by the Rules require expert testimony involving a fairly substantial expense and consumption of time. The state interest in keeping drunk drivers off the roads is evidently so compelling in the legislature's view that it devised an easier way of admitting breath test evidence in prosecutions under A.R.S. § 28-692. In essence, the statute does away with the necessity of expert testimony and permits the court to admit evidence of breath test analysis simply by showing that the test was administered with an approved device, by an operator holding a permit, who fol-

---

**5.** At oral argument, Vetsch questioned whether subdivisions (a) and (b) of subsection (1) of § 39-08-01 create separate crimes or are simply alternative methods of proving the same crime. The complaint charged Vetsch with violation of § 39-08-01, without specifying subdivisions (a) or (b) of subsection (1).

N.D.C.C. § 39-08-01, with the amendments made by 1983 Session Laws, Ch. 415, § 21, provides:

"1. ~~No~~ A person ~~shall~~ may not drive ~~or be in actual physical control of~~ any vehicle upon a highway or upon public or private areas to which the public has a right of access for vehicular use in this state if any of the following apply:

a. ~~He is an habitual user of narcotic drugs or is under the influence of a narcotic drug,~~ That person has a blood alcohol concentration of at least ten one-hundredths of one percent by weight at the time of the performance of a chemical test within two hours after the driving.

b. ~~He~~ That person is under the influence of intoxicating liquor~~,~~.

The trial court's instructions to the jury submitted subdivisions (a) and (b) as alternative methods of proving the offense.

Vetsch did seek "interrogatorial forms of verdict" as to which subsection the jury used to convict him, but he did not seek separate verdict forms for separate offenses. Nor has he pressed the failure to submit such a special verdict form as an issue on this appeal. See N.D.R.Crim.P. Rule 31(e) which provides for a special verdict form only in very limited circumstances in criminal trials. Compare Rules 8(a), 13 and 14, N.D.R.Crim.P. Since Vetsch was convicted of only a single offense, it is difficult for us to perceive how his "separate crimes" argument aids him on this appeal. In any event, we conclude that this issue was neither appropriately raised below nor presented on this appeal. Therefore, we decline to address it. *State v. Moore*, 286 N.W.2d 274, 283 (N.D.1979).

lowed methods approved by DHS and complied with procedures adopted by DHS. This permits evidentiary admission of the test and its results with no expert testimony at all. The reliability and accuracy of the results is vouched for by demonstrating compliance with the statute and the procedures adopted by DHS. Since the statute permits admission of such evidence without expert witness testimony to establish accuracy and reliability of the results, we held in *Fuenning* that all the requirements of the statute must be scrupulously met so that there will be a uniform, statewide basis of testing to vouch for accuracy and reliability. *Id.* [*Fuenning v. Superior Court In and For County of Maricopa,* 139 Ariz. 590] at 602, 680 P.2d [121] at 133.

We did not hold in *Fuenning* that this method is exclusive. We expressly hold to the contrary in the case at bench. The statutory method is a workable, reasonable method provided as an alternative to the method of admission under the Rules of Evidence. Either party may use either method." 691 P.2d at 682.

■ The trial court properly admitted the test report and fairly instructed the jury on its relevancy under the statutory standards.

Accordingly, we affirm.

ERICKSTAD, C.J., and LEVINE, VANDE WALLE and GIERKE, JJ., concur.