**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Steven William VOGEL, Defendant and Appellant.**

**Cr. No. 900197.**

Supreme Court of North Dakota.

March 5, 1991.

Keith Reisenauer (argued), Asst. States Atty., Fargo, for plaintiff and appellee.

William Kirschner & Associates, Fargo, for defendant and appellant, argued by William Kirschner, Fargo.

MESCHKE, Justice.

Steven William Vogel appealed his jury conviction of the offense of actual physical control of a motor vehicle while under the influence of intoxicating liquor. We hold that the legislature defined the crime without unconstitutionally shifting the burden of proof to the accused, but that the trial court improperly did so by instructing the jury on the effect of evidence of Vogel's intoxilyzer test. We reverse and remand for a new trial.

Two Fargo police officers found Vogel asleep in his car in a parking lot about 1:20 a.m. one morning. The car engine was running, the headlights were on, and the doors were unlocked. Vogel was slumped over in the front seat. After knocking on the window, an officer opened the driver's door, turned off the engine and lights, and, with difficulty, roused Vogel. Vogel smelled of alcohol, appeared confused, and was unintelligible in responding to questions. The officer asked Vogel to leave his car and to be seated in the police car. Helped by an officer, Vogel unsteadily walked to the police car. Vogel was not asked to perform any field sobriety tests, but was arrested for actual physical control.

At the jail, an intoxilyzer test of Vogel reported a blood alcohol concentration of 0.13 of one percent. Vogel was charged

alternatively with actual physical control of a vehicle while having a blood alcohol concentration of at least 0.10 of one percent within two hours of driving, or while being under the influence of intoxicating liquor.

At the jury trial, the intoxilyzer test was admitted into evidence, along with certified copies of the state toxicologist's register of testing devices currently approved, the register of currently certified operators of intoxilyzers, and the operational checklist and forms for intoxilyzer tests prescribed by the state toxicologist. After the prosecution rested, Vogel moved for acquittal on the alternative charge of actual physical control with a blood alcohol concentration of at least 0.10 of one percent within two hours of driving. Because there was no evidence of Vogel's time of driving, the trial court granted the motion and that charge was not submitted to the jury. The jury convicted Vogel of actual physical control while under the influence of intoxicating liquor.

In his appeal, Vogel argues that the jury instructions created an unconstitutional "mandatory irrebuttable presumption" that shifted the burden of proof to him.

## I. PRESUMPTION OR DEFINITION?

The trial court instructed the jury about chemical tests for intoxication.[1] Vogel begins with an attack on the second paragraph:

> A person having a blood alcohol concentration of at least ten one-hundredths of one percent by weight at the time of the performance of a chemical test within two hours after driving or being in physical control of a vehicle is under the influence of intoxicating liquor at the time of driving or being in physical control of a vehicle.

Vogel argues that this part created a "mandatory irrebuttable presumption" because it "contained no qualifying phrases and thus would lead a reasonable juror to have understood that once the State had proved the Defendant had a blood alcohol content above .10 that was it."

1. In full, this jury instruction read:
CHEMICAL TESTS FOR INTOXICATION
Upon the trial of a criminal action arising out of acts alleged to have been committed by any person in actual physical control of a motor vehicle while under the influence of intoxicating liquor, evidence of the amount of alcohol in the person's blood at the time of the act alleged as shown by a chemical analysis of his breath is admissible.
A person having a blood alcohol concentration of at least ten one-hundredths of one percent by weight at the time of the performance of a chemical test within two hours after driving or being in physical control of a vehicle is under the influence of intoxicating liquor at the time of driving or being in physical control of a vehicle.
The results of such chemical analysis shall be received in evidence when it is shown that the test was fairly administered, provided that a test of a person's breath and the result thereof is further shown to have been performed according to the methods and/or with devices approved by the state toxicologist and by an individual possessing a certificate of qualification to administer the test issued by the state toxicologist. The state toxicologist is authorized to approve satisfactory techniques, devices, and methods of chemical analysis and to determine the qualifications of individuals to conduct such analysis, and shall issue a certificate to all qualified operators who shall exhibit the certificate upon demand by the person requested to take the chemical test. The state toxicologist may appoint, train, certify and supervise field inspectors of breath testing equipment and its operation, and the inspectors shall report the findings of any inspection to the state toxicologist for appropriate action. Upon approval of the methods and devices and techniques required to perform such tests and the persons qualified to administer them, the state toxicologist shall prepare and file written record of such approval with the clerk of the district court in each county within the state which shall include:
(a) An annual register of the specific testing devices currently approved including serial number, location, and the date and results of last inspection.
(b) An annual register of current qualified and certified operators of said devices stating the date of certification and its expiration.
(c) The operational checklist and forms prescribing the methods and techniques currently approved by the state toxicologist in using such devices during the administration of the tests.
Copies of the above records certified by the clerk of the district court shall be admitted as prima facie evidence of the matters stated therein.
*Compare* NDCC 12.1-01-03(5).

Vogel was convicted of violating NDCC 39–08–01(1)(b) by actual physical control of a vehicle while "under the influence of intoxicating liquor." *See State v. Kimball,* 361 N.W.2d 601 (N.D.1985). One specific definition of "under the influence of intoxicating liquor" is found in another section in the title on motor vehicles. This related definition, substantially included in this instruction,[2] says:

A person having an alcohol concentration of at least ten one-hundredths of one percent by weight at the time of the performance of a chemical test within two hours after driving or being in physical control of a vehicle is under the influence of intoxicating liquor at the time of driving or being in physical control of a vehicle.

NDCC 39–20–07(3). When first enacted, this subsection was worded differently and read, *"shall be presumed to be* under the influence of intoxicating liquor," rather than *"is* under the influence." (Emphasis added). *State v. Hendrickson,* 240 N.W.2d 846, 851 (N.D.1976). A 1983 amendment to this subsection replaced the phrase, "shall be presumed to be," with the single word, "is." S.L.1983, ch. 415, § 29. Legislative history indicates that the intention of this enactment was to establish a "per se," strict-liability crime in two ways, one of which was this definition of "under the influence." House Judiciary Minutes, March 2, 1983, SB 2373. Using this legislative history, the prosecution counters that "we are no longer dealing with a presump-

tion statute, but rather a per se statute." We agree.

■■■ The Due Process Clause of the Fourteenth Amendment protects an accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the charged crime. *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970). Due process also prohibits use of presumptions in jury instructions that have the effect of relieving the prosecution of its burden of proving every element of the crime beyond a reasonable doubt.[3] *Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 1970, 85 L.Ed.2d 344 (1985). *See also State v. Sheldon,* 301 N.W.2d 604, 612 (N.D.1980); *State v. Trieb,* 315 N.W.2d 649 (N.D.1982). Jury instructions that use burden-shifting presumptions "subvert the presumption of innocence accorded to accused persons, and also invade the truth-finding task assigned solely to juries in criminal cases."[4] *Carella v. California,* 491 U.S. 263, 109 S.Ct. 2419, 2420, 105 L.Ed.2d 218 (1989). These due process principles are well established in the case law.

■ A line of expository opinions from the United States Supreme Court disapproves jury instructions that relieve the prosecution from its burden of proof on the critical question of intent to commit the crime. *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); *Francis v. Franklin,* 105 S.Ct. at 1977. Sometimes these opinions have referred to "conclu-

---

**2.** NDCC 1–01–09 ("Whenever the meaning of a word or phrase is defined in any statute, such definition is applicable to the same word or phrase wherever it occurs in the same or subsequent statutes, except when a contrary intention plainly appears"). NDCC 1–02–03 ("Technical words and phrases and such others as have acquired a peculiar and appropriate meaning in law, or as are defined by statute, must be construed according to such peculiar and appropriate meaning or definition"). *See State v. Plentychief,* 464 N.W.2d 373 (N.D.1990).

**3.** *Compare* NDREv 301(a) on civil presumptions which do not apply to criminal cases.

**4.** If it does not shift the burden of proof to the accused on an ingredient of the offense, an

instruction about a presumption can be valid. A permissive inference, sometimes called a presumption, is not forbidden. *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 2457 n. 9, 61 L.Ed.2d 39 (1979); *County Court of Ulster County v. Allen,* 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979). *See also* NDCC 12.1–01–03(4); LaFave and Scott, Substantive Criminal Law § 2.13(b), p. 225 (1986). An instruction that places the burden of proof on the accused for an affirmative defense of justification, when the defense is not a negative of an element of the crime, is valid. *Martin v. Ohio,* 480 U.S. 228, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987). *See also State v. Michlitsch,* 438 N.W.2d 175 (N.D. 1989) (Defendant has burden of proving affirmative defense for strict-liability crime); *State v. Dilger,* 338 N.W.2d 87, 95 (N.D.1983).

sive" or "irrebuttable" presumptions. *Sandstrom*, 99 S.Ct. at 2456. Still, it is quite clear that the instructions deemed unconstitutional, however characterized, are "burden-shifting presumptions" which shift the burden of proof to the defendant on an element of the crime, usually intent. Justice Brennan's opinion for the Court in *Francis v. Franklin* helps clarify what is a "burden-shifting" presumption:

> An *irrebuttable* presumption, of course, does not shift any burden to the defendant; it eliminates an element from the case if the State proves the requisite predicate facts. Thus the Court in *Patterson* [v. New York, 432 U.S. 197, 97 S.Ct. 2319 at 2329, 53 L.Ed.2d 281 (1977) ] could only have been referring to a mandatory *rebuttable* presumption when it stated that "such *shifting* of the burden of persuasion ... is impermissible." *Ibid.* (emphasis added).

105 S.Ct. at 1973 n. 5.[5] In this case, we consider whether the effect of the statutory definition of "under the influence of intoxicating liquor" shifts the burden of proof to the accused on any element.

We are not here concerned with a crime dependent upon the accused's intent. Rather, we are concerned with a strict liability crime of control of a vehicle while under the influence of intoxicating liquor. Principles against shifting the burden of proof to the accused have little bearing here. The prosecution must still prove every element of this crime beyond a reasonable doubt. Even when the intoxication element of control is further defined as "having a blood alcohol concentration of at least ten one-hundredths of one percent by weight at the time of the performance of a chemical test within two hours after ... being in physical control of a vehicle," the burden of proof does not shift to the accused; the prosecution must prove each element of that detailed definition beyond a

reasonable doubt. So, there is no unconstitutional presumption here, but only a detailed definition of the crime.

<span style="background:black"> </span> The legislature has the authority to define and punish crimes by enacting statutes. Article IV, Section 13, ND Constitution; *State ex rel Larabee v. Barnes*, 3 N.D. 319, 55 N.W. 883 (1893). Generally, a criminal statute is valid if it does not violate constitutional guarantees of individual rights. *See State ex rel Linde v. Taylor*, 33 N.D. 76, 156 N.W. 561 (1916). Recently, Chief Justice Erickstad sought to exemplify the difference between an unconstitutional presumption of the element of intent defined for a crime and a definition of a strict liability crime:

> The legislature also has the authority to enact strict liability offenses which require no intent. *See* section 39–08–07, N.D.C.C. (hit and run); section 39–08–20, N.D.C.C. (driving without liability insurance); section 6–08–16, N.D.C.C. (insufficient funds). "Strict liability statutes in criminal law do not invariably violate constitutional requirements." *State v. Olson*, 356 N.W.2d 110, 112 (N.D.1984).

*City of Dickinson v. Gresz*, 450 N.W.2d 216, 220 (N.D.1989). A definition of a crime that does not shift the burden of proof to the accused is constitutional.

The legislature has defined one variation of the crime of actual physical control while under the influence of intoxicating liquor as the accused having a "alcohol concentration of at least ten one-hundredths of one percent by weight at the time of the performance of a chemical test." Nothing in that definition shifts the burden of proof to the accused. The prosecution must prove each element beyond a reasonable doubt. We conclude that the legislature has constitutionally defined the

---

5. Of course, a "conclusive" or "irrebuttable" presumption on the element of intent for an intentional crime shifts the burden of proof. *See* LaFave and Scott, *Substantive Criminal Law* § 2.13(d), p. 231 (1986). Any presumption that relieves the prosecution of the duty to prove an element of an offense beyond a reasonable doubt is, no doubt, invalid. 22A C.J.S. *Criminal Law* § 695(b) (1989) ("The ultimate test of the validity of a presumption, whether judicial or statutory, is whether it undermines the fact finder's responsibility to find the ultimate facts beyond a reasonable doubt").

crime and has not unconstitutionally shifted the burden of proof to the accused.[6]

## II. ADMISSIBILITY OR WEIGHT?

█ Vogel next attacks the third paragraph of the trial court's instructions to the jury about chemical tests for intoxication. *See* footnote 1. This part instructed:

The results of such chemical analysis shall be received in evidence when it is shown that the test was fairly administered, provided that a test of a person's breath and the result thereof is further shown to have been performed according to the methods and/or with devices approved by the state toxicologist and by an individual possessing a certificate of qualification to administer the test issued by the state toxicologist.

Vogel argues that this "usurps the jury's function" because it tells the jury that, by receiving the test results in evidence, the trial court "has determined that the test was fairly administered." Vogel argues that this instruction tells the jury that the test results must be correct, improperly comments on the evidence, and shifts the burden to the defendant to prove his innocence. We agree that this instruction had the effect of shifting the burden to Vogel to disprove fair administration of the test.

The prosecution responds that this part of the instruction "is a correct statement of the law and is substantially similar to the language of Section 39–20–07(5)."[7] The prosecution acknowledges that this instruction "may not have been necessary," but argues that it was "simply superfluous and did not prevent [Vogel] from arguing to the

jury what weight, relevancy and credibility the test should receive." Unfortunately, the trial court did not tell the jury that it could determine what weight and credibility to give the test result. Nor did the trial court specifically instruct that the prosecution must prove the fair administration of the intoxilyzer test in order to prove Vogel's intoxication under the detailed definition of the offense given in the second paragraph of the instructions about chemical tests.

The rules of evidence diagram the division of duties between the trial court in admitting evidence and the jury in weighing evidence. NDREv 1008 directs that questions about the admissibility of evidence are decided by the judge and that questions about the effect of the evidence are decided by the jury. The Explanatory Note to NDREv 1008 observes that this rule is a specific application of NDREv 104, "which separates the function of judge and jury with respect to preliminary questions of admissibility in general."

█ We have explained before that the trial court makes the preliminary decision about whether a test report was competent evidence before permitting its evidentiary use. *State v. Vetsch,* 368 N.W.2d 547, 550 (N.D.1985). After this threshold determination is made, it is for the jury to assess the weight and credibility of the evidence. *Id.* The reliability of a chemical test is normally considered twice in a trial, once by the court for its competence as evidence, and again by the jury for its weight as evidence. Jury instructions should reflect this functional difference consistent

---

6. Many courts have rejected attacks upon similar statutes by holding that the legislature "merely invoked its power to define criminal conduct within constitutional limits" by defining the element of intoxication. *Forte v. State,* 707 S.W.2d 89, 95 n. 12 (Tex.Cr.App.1986). *See* Annotation, *Validity, Construction, and Application of Statutes Directly Proscribing Driving with Blood Alcohol Level in Excess of Established Percentage,* 54 ALR4th 149, § 3(b) (1987). *See also Koulianos v. State,* 383 S.E.2d 642, 192 Ga.App. 90 (1989).

7. NDCC 39–20–07(5) says:
 The results of the chemical analysis must be received in evidence when it is shown that the

sample was properly obtained and the test was fairly administered, and if the test is shown to have been performed according to methods and with devices approved by the state toxicologist, and by an individual possessing a certificate of qualification to administer the test issued by the state toxicologist. The state toxicologist is authorized to approve satisfactory devices and methods of chemical analysis and determine the qualifications of individuals to conduct such analysis, and shall issue a certificate to all qualified operators who exhibit the certificate upon demand of the person requested to take the chemical test.

with the constitutional burden on the prosecution to prove the test results as an element of the offense charged.[8]

The language of NDCC 39–20–07(5) was improperly included in these instructions to the jury because it has only to do with the judge's preliminary function of admitting evidence; it has nothing to do with the jury's function of weighing the evidence. By telling the jury that the test results were received in evidence when the test was fairly administered, the effect of this instruction shifted the burden of disputing the test results to Vogel. This was improper.

## III. HARMLESS OR PREJUDICIAL?

 The prosecution argues that any error in giving this improper instruction was harmless. Unless the substantial rights of the accused are prejudiced, an error in a criminal trial is harmless. NDRCrimP 52(a). *See State v. Sheldon*, 301 N.W.2d at 613. A constitutional error in instructing a jury about the burden of proof does not require reversal if it is harmless beyond a reasonable doubt. *Rose v. Clark*, 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986) (Applying the standard of *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). Under *Rose*, if the evidence is so dispositive that we can say beyond a reasonable doubt that the jury would have found it unnecessary to rely on the erroneous instruction, we should not set aside the conviction.

The prosecution relies on *State v. Fuchs*, 219 N.W.2d 842 (N.D.1974). *Fuchs* held that an error in admitting evidence of a breathalyzer test result without a proper foundation was harmless, when there was competent evidence of another test which showed 0.23 of one percent by weight of alcohol in the defendant's blood. Although there was circumstantial evidence of Vogel's intoxication in this case, other than the intoxilyzer test, it was not conclusive.

 Jury instructions must fairly inform the jury of the applicable law, and they must not mislead or confuse the jury. *State v. Saul*, 434 N.W.2d 572, 576 (N.D. 1989). While we consider jury instructions as a whole, we find nothing in the instructions that told the jury that it could weigh the reliability of the testing method and the test result in determining Vogel's intoxication. The instruction given substantially

---

**8.** The Minnesota District Judges Association Committee has developed a suggested instruction which appropriately guides a jury in weighing the elements of physical control in that state. Minnesota–Jury Instruction Guide 3.8, 10A Minnesota Practice 91 (1989). Adapted for North Dakota, that instruction would read:

> The elements of being in actual physical control with an alcohol concentration of 0.10 or more are:
>
> First, defendant was in actual physical control of a motor vehicle within two hours of the test. A person is in "actual physical control" of a motor vehicle when the person is present in a vehicle and is in a position to either direct the movement of the vehicle or keep the vehicle in restraint. It is not necessary for the engine to be running in order for a person to be in actual physical control of a motor vehicle.
>
> Second, at the time of the chemical test defendant's alcohol concentration was 0.10 of one percent or more by weight. In this case, the defendant took a breath test to determine his alcohol concentration. The State has introduced evidence of the testing method used and the results of the breath test that was administered to defendant. You must, however, evaluate the reliability of the testing method and the test results in determining whether defendant's alcohol concentration was 0.10 or more at the time he was in actual physical control of the motor vehicle.
>
> Third, defendant's act took place on ____, in the County of ____, State of North Dakota. If you find that each of these three elements has been proved beyond a reasonable doubt, defendant is guilty of being in actual physical control of a motor vehicle with an alcohol concentration of 0.10 of one percent or more by weight. If you find that any of these elements has not been so proved, defendant is not guilty.

The Comment to this Minnesota pattern instruction delineates the difference between the functions of admitting evidence and of weighing evidence:

> Although the reliability of the testing method and results is a foundational question to be decided by the court in determining admissibility, *State, City of St. Louis Park v. Quinn*, 289 Minn. 184, 182 N.W.2d 843 (1971), *State v. Dille*, 258 N.W.2d 565 (Minn.1977), once admitted into evidence, the reliability of the test is also an issue for the jury in determining the weight to be given to the evidence. *State v. Dille*, supra, at 569.

10A Minnesota Practice 92.

impaired the truth-finding function of the jury by shifting the burden to Vogel to disprove fair administration of the test. This impairment was not cured by other instructions. We conclude that the instruction was prejudicial, not harmless.

We conclude that the legislature constitutionally defined the crime of control of a motor vehicle while intoxicated without shifting the burden of proof, but that the trial court improperly did so in instructing the jury on the effect of the evidence about the intoxilyzer test of Vogel. We reverse and remand for a new trial with proper instructions to the jury.

LEVINE, VANDE WALLE and GIERKE, JJ., and WILLIAM F. HODNY, District Judge, concur.

WILLIAM F. HODNY, District Judge, sitting in place of ERICKSTAD, C.J., disqualified.